Appeal No. 2011-1009

# United States Court of Appeals

## *for the*

# Federal Circuit

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

DEC 15 2010

IAN HORBALY
CLERK

SOVERAIN SOFTWARE LLC,,

*Plaintiff-Appellee,*

ORIGINAL
WITH PROOF OF
SERVICE

— v. —

NEWEGG INC.,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 07-CV-0511,
JUDGE LEONARD DAVIS

# AVON PRODUCTS, INC.'S
# MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF

RECEIVED

DEC 15 2010

United States Court of Appeals
For The Federal Circuit

MICHAEL A. NICODEMA
GASTON KROUB
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey  07932
(973) 360-7900

*Attorneys for Movant, Avon Products, Inc.*

December 14, 2010



Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SOVERAIN SOFTWARE, LLC   v.   NEWEGG INC.

No. 2011-1009

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Amicus Curae, Avon Products, Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.   The full name of every party or amicus represented by me is:


Avon Products, Inc.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:


None.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:


None.

4.   ☐ The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Greenberg Traurig, LLP (Michael A. Nicodema, Gaston Kroub)

12/14/10
Date

*Michael Nicodema*
Signature of counsel

*Michael Nicodema*
Printed name of counsel

Please Note: All questions must be answered
cc: Kent Baldaue, Esq., Ciadia Wilson, Esq., Paul Ripp, Esq.

124

## I.    **FACTUAL BACKGROUND**

### A.    *Movant is a Defendant in a separate patent lawsuit involving the same patents and claim terms at issue in this appeal.*

On June 25, 2009, Soverain filed its patent infringement lawsuit against eighteen Defendants. *See* Complaint for Patent Infringement (the "Soverain Complaint"), attached hereto as Exhibit A.    In this Complaint, Soverain complained that defendants infringed the following patents: United States Patent No. 5,715,314 entitled "Network Sales System" (the "'314 Patent"); United States Patent No. 5,909,492 entitled "Network Sales System" (the "'492 Patent"); and United States Patent No. 7,272,639 entitled "Network Sales System" (the "'639 Patent"). Soverain complained generically that each defendant had infringed claim 34 of the '314 Patent, claim 17 of the 492 patent, and claim 1 of the '639 Patent.

The Court held its Markman hearing in this case on October 28, 2010. At issue in the Markman hearing was the claim construction of the following claim terms under the '314 and '492 Patents:

- "buyer computer for operation by a user"

- "client computer for operation by a client user"

- "collection"

- "network-based sales system"

- "payment computer"

- "payment message"

- "plurality"

- "plurality of respective products / plurality of products [added to said/the shopping cart]"

- "shopping cart computer"

- "shopping cart message"

- "universal resource locator"

*See* Soverain's Revised Opening Claim Construction Brief, attached hereto as Exhibit B. Also at issue was the claim construction of the following claim terms under the '639 Patents:

- "appending the stored session identifier to each of the subsequent distinct requests"

- "a service request to which a session identifier stored at the client has been appended by the client"

- "session identifier"

- "session identifier appended to the service request / appended session identifier"

- "stored session identifier"

- "validating the session identifier appended to the service request"

*Id.*

The district court has not yet issued its claim construction order. Additionally, the movant and its co-defendants have filed an opposed Motion for a

Stay Pending Appeal in the district court. The district court has not yet issued any order on that pending motion.

## B.  *The patents and claims at issue in this appeal are the exact same as those at issue in Soverain's district court case.*

NewEgg appealed the district court's August 11, 2010 Final Judgment. In that Final Judgment, the district court noted that Defendant Newegg Inc. ("Newegg") is found to have unlawfully infringed the '314, '492, and '639 Patents. Several of the claim terms in the district court's Claim Construction Order are similar, and in some instances identical, to those claims at issue in the district court's October 28, 2010 Markman hearing:

- Shopping cart message;

- Shopping cart computer;

- plurality of respective products/ plurality of products [added to said/the shopping cart];

- Payment message;

- Validating, at the server system, the appended session identifier / validating the session identifier;

- appended to the service request;

- Session identifier; and

- the stored session identifier.

## II.   ARGUMENT IN SUPPORT OF MOTION FOR LEAVE

Motions for leave to file an amicus brief are governed by Federal Rule of Appellate Procedure 29. Under Rule 29, any such motion must state: (1) the movant's interest; and (2) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.

### A.   The Movant has an interest in claim construction issues involving the '314, '492, and '639 Patents that arise in NewEgg's appeal.

As a defendant in the pending Soverain lawsuit, Movant has a substantial interest the claim construction issues involving the '314, '492, and '639 Patents that arise in NewEgg's appeal. As discussed above, Movant is a defendant in a pending district court case involving the same claim construction issues. Should this Court address the scope and meaning of the asserted claims in deciding the issues of infringement and invalidity raised by NewEgg's appeal, it is highly likely that those constructions will be binding on Movant. Movant thus has an interest in asserting the claim construction arguments contained in its Amicus Brief.

### B.   Avon's amicus brief is necessary to assert Avon's interest, which may differ from those of NewEgg.

Avon's amicus brief is necessary to assert Avon's interest in those claim construction issues that may adversely effect Avon's position in the district court. While Avon is not adverse to NewEgg's positions in this appeal, it notes that NewEgg and Soverain agreed to all claim construction issues. *See* **Exhibit C,**

Claim Construction Order ("The Court having been advised that the parties have agreed on the constructions for the remaining claim terms hereby adopts the parties' agreed constructions . . . ."). In contrast, Avon and Soverain have requested that the district court construe these same terms.

Avon thus has an interest in asserting its own interpretation of claim terms to which NewEgg has agreed. NewEgg simply cannot adequately assert these interests in this appeal given its prior agreement, and in fact NewEgg's Brief of Appellant in this Court is silent on claim construction issues. Avon's Amicus Brief contains these arguments, and it is only through an amicus brief that Avon can assert these arguments in this forum.

## III.  CONCLUSION

Avon respectfully requests that the Court grant this Motion for Leave to File An *Amicus Curiae* Brief.

Dated: December 14, 2010

Respectfully submitted,

Michael A. Nicodema
Gaston Kroub
**GREENBERG TRAURIG, LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-2100
*Attorneys for Movant, Avon Products, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| Soverain Software LLC,<br><br>Plaintiff,<br><br>J.C. Penney Corporation, Inc.,<br>Amway Corp.,<br>Avon Products, Inc.,<br>Bidz.com, Inc.,<br>Etronics, Inc.,<br>HSN, Inc.,<br>HSN Improvements, LLC,<br>Cornerstone Brands, Inc.,<br>Ballard Designs, Inc.,<br>Garnet Hill, Inc.,<br>Smith & Noble, LLC,<br>The Territory Ahead, Inc.,<br>QVC, Inc.,<br>Shutterfly, Inc.,<br>Victoria's Secret Stores Brand Management, Inc.,<br>Victoria's Secret Direct Brand Management, LLC,<br>VistaPrint, Ltd., and<br>VistaPrint USA, Inc.<br><br>Defendants. | Civil Action No. 6:09-CV-274<br><br>JURY |

## COMPLAINT FOR PATENT INFRINGEMENT

1.    Plaintiff Soverain Software LLC ("Soverain"), for its complaint against

Defendants J.C. Penney Corporation, Inc., Amway Corp., Avon Products, Inc., Bidz.com, Inc.,

Etronics, Inc., HSN, Inc., HSN Improvements, LLC, Cornerstone Brands, Inc., Ballard Designs,

Inc., Garnet Hill, Inc., Smith & Noble, LLC, The Territory Ahead, Inc., Victoria's Secret Stores

Brand Management, Inc., Victoria's Secret Direct Brand Management, LLC, QVC, Inc.,

Shutterfly, Inc., VistaPrint, Ltd. and VistaPrint USA, Inc. (collectively "Defendants"), alleges as follows.

## INTRODUCTION

2.      This action arises under the patent laws of the United States, including 35 U.S.C. § 100, *et seq.*, for Defendants' infringement of one or more of Soverain's United States Patent Nos. 5,715,314, 5,909,492, and 7,272,639 (collectively, "the Patents in Suit").

## THE PARTIES

3.      Plaintiff Soverain is a Delaware limited liability company with its principal place of business at 233 South Wacker Drive, Suite 9425, Chicago, IL 60606.

4.      On information and belief, defendant J.C. Penney Corporation, Inc. ("J.C. Penney") is a Delaware Corporation with its principal place of business in this district at 6501 Legacy Drive, Plano, TX, 75024.  J.C. Penney does business in this jurisdiction through, among others, its ecommerce websites www.jcpenney.com and www.jcp.com.  Defendant J.C. Penney is authorized to do business in the state of Texas and may be served with process via its registered agent for service of process, CT Corporation System, 350 N. Saint Paul Street, Dallas, TX 75201.

5.      On information and belief, Amway Corp. ("Amway") is a Virginia corporation with its principal place of business at 7575 E. Fulton Street, Ada, MI 49335.  On information and belief, Amway markets and sells products under the "Amway Global" brand.  Amway does business in this jurisdiction through, among others, the ecommerce website www.quixtar.com.  Amway is authorized to do business in the state of Texas and may be served with process via its registered agent for service of process, CT Corporation System, 350 N. Saint Paul Street, Dallas, TX 75201.

2

6.     On information and belief, Avon Products, Inc. is a New York corporation with its principal place of business at 1345 Avenue of the Americas, New York, NY 10105. Avon does business in this jurisdiction through, among others, the ecommerce website www.avon.com. Avon is authorized to do business in the state of Texas and may be served with process via its registered agent for service of process, CT Corporation System, 350 N. Saint Paul Street, Dallas, TX 75201.

7.     On information and belief, Bidz.com Inc. ("Bidz.com") is a Delaware corporation with its principal place of business at 3562 Eastham Drive, Culver City, CA 90232. Bidz.com does business in this jurisdiction through, among others, the ecommerce websites www.bidz.com and http://buyz.bidz.com. This case arises out of Bidz.com's business in Texas, but Bidz.com does not maintain a regular place of business in Texas nor does it have a designated agent for service of process in Texas. Bidz.com may therefore be served with process by serving the Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and asking the Secretary of State to serve Bidz.com at its principal place of business at 3562 Eastham Drive, Culver City, CA 90232 via Certified Mail – Return Receipt Requested.

8.     On information and belief, Etronics, Inc. ("Etronics") is a New York Corporation with is principal place of business at 216 Maspeth Avenue, Brooklyn, NY 11211. Etronics does business in this jurisdiction through its ecommerce website www.etronics.com. This case arises out of Etronics' business in Texas, but, on information and belief, Etronics does not maintain a regular place of business in Texas nor does it have a designated agent for the service of process in Texas. Etronics may therefore be served with process by serving the Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code §

17.044 and asking the Secretary of State to serve Etronics at its principal place of business at 216
Maspeth Avenue, Brooklyn, NY 11211, via Certified Mail – Return Receipt.

9.       On information and belief, HSN, Inc. ("HSN") is a Delaware corporation with its
principal place of business at 1 HSN Drive, St. Petersburg, FL 33729.  HSN does business in this
jurisdiction through, among others, the ecommerce websites www.alsto.com, www.hsn.com, and
www.improvementscatalog.com.  This case arises out of HSN's business in Texas, but, on
information and belief, HSN does not maintain a regular place of business in Texas, nor does it
have a designated agent for the service of process in Texas.  Defendant HSN may therefore be
served with process by serving the Secretary of State of the State of Texas pursuant to the Texas
Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and asking the Secretary of
State to serve HSN at its principal place of business at: 1 HSN Drive, St. Petersburg, FL 33729
via Certified Mail – Return Receipt Requested.

10.      On information and belief, Defendant HSN Improvements LLC ("HSN
Improvements") is a Delaware limited liability company with its principal place of business at 1
HSN Drive, St. Petersburg, FL 33729.  HSN Improvements does business in this jurisdiction
through, among others, the ecommerce websites www.alsto.com and
www.improvementscatalog.com.  On information and belief, HSN Improvements is a wholly-
owned subsidiary of Defendant HSN.  This case arises out of HSN Improvements' business in
Texas, but, on information and belief, HSN Improvements does not maintain a regular place of
business in Texas, nor does it have a designated agent for the service of process in Texas.
Defendant HSN Improvements may therefore be served with process by serving the Secretary of
State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice &
Remedies Code § 17.044 and asking the Secretary of State to serve HSN at its principal place of

4

business at 1 HSN Drive, St. Petersburg, FL 33729 via Certified Mail – Return Receipt
Requested.

11.     On information and belief, Cornerstone Brands, Inc. ("Cornerstone") is a
Delaware corporation with its principal place of business at 5568 West Chester Road, West
Chester, OH 45069. Cornerstone does business in this jurisdiction through, among others, the
ecommerce websites www.grandinroad.com and www.improvementscatalog.com. On
information and belief, Cornerstone is a wholly-owned subsidiary of Defendant HSN. This case
arises out of Cornerstone's business in Texas, but, on information and belief, Cornerstone does
not maintain a regular place of business in Texas, nor does it have a designated agent for the
service of process in Texas. Cornerstone may therefore be served with process by serving the
Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil
Practice & Remedies Code § 17.044 and asking the Secretary of State to serve Cornerstone at
5568 West Chester Road, West Chester, OH 45069 via Certified Mail – Return Receipt
Requested

12.     On information and belief, Ballard Designs, Inc. ("Ballard") is a Georgia
corporation having its principal place of business at 1670 Defoor Avenue NW, Atlanta, GA
30318. Ballard does business in this jurisdiction through, among others, its ecommerce website
www.ballarddesigns.com. On information and belief, Ballard is a wholly-owned subsidiary of
Defendant Cornerstone, which is a wholly-owned subsidiary of Defendant HSN. This case
arises out of Ballard's business in Texas, but, on information and belief, Ballard does not
maintain a regular place of business in Texas, nor does it have a designated agent for the service
of process in Texas. Ballard may therefore be served with process by serving the Secretary of
State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice &

Remedies Code § 17.044 and asking the Secretary of State to serve Ballard at 1670 Defoor

Avenue NW, Atlanta, GA 30318 via Certified Mail – Return Receipt Requested.

13.    On information and belief, Garnet Hill, Inc. ("Garnet Hill") is a New Hampshire

corporation with its principal place of business at 231 Main Street, Franconia, NH 03580.

Garnet Hill does business in this jurisdiction through, among others, its ecommerce website

www.garnethill.com. On information and belief, Garnet Hill is a wholly-owned subsidiary of

Defendant Cornerstone, which is a wholly owned subsidiary of Defendant HSN. This case arises

out of Garnet Hill's business in Texas, but, on information and belief, Garnet Hill does not

maintain a regular place of business in Texas, nor does it have a designated agent for the service

of process in Texas. Garnet Hill may therefore be served with process by serving the Secretary

of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice &

Remedies Code § 17.044 and asking the Secretary of State to serve Garnet Hill, at 231 Main

Street, Franconia, NH 03580 via Certified Mail – Return Receipt Requested.

14.    On information and belief, Smith+Noble, LLC ("S+N") is a Delaware limited

liability company with its principal place of business at 1181 California Avenue, Corona, CA

92881. S+N does business in this jurisdiction through, among others, its ecommerce website

www.smithandnoble.com. On information and belief, S+N is a wholly owned subsidiary of

Defendant Cornerstone, which is a wholly-owned subsidiary of HSN. This case arises out of

S+N's business in Texas, but, on information and belief, S+N does not maintain a regular place

of business in Texas, nor does it have a designated agent for the service of process in Texas.

S+N may therefore be served with process by serving the Secretary of State of the State of Texas

pursuant to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and

asking the Secretary of State to serve S+N, at 1181 California Avenue, Corona, CA 92881 via

Certified Mail – Return Receipt Requested.

15.    On information and belief, The Territory Ahead, Inc. ("TTA") is a Delaware

corporation with its principal place of business at 419 State Street, Santa Barbara, CA 93101.

TTA does business in this jurisdiction through, among others, the ecommerce websites

www.territoryahead.com and www.isabellabird.com. On information and belief, TTA is a

wholly-owned subsidiary of Defendant Cornerstone, which is a wholly-owned subsidiary of

Defendant HSN. This case arises out of TTA's business in Texas, but, on information and belief,

TTA does not maintain a regular place of business in Texas, nor does it have a designated agent

for the service of process in Texas. TTA may therefore be served with process by serving the

Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil

Practice & Remedies Code § 17.044 and asking the Secretary of State to serve TTA, at 419 State

Street, Santa Barbara, CA 93101 via Certified Mail – Return Receipt Requested.

16.    On Information and belief, defendant QVC, Inc. ("QVC") is a Delaware

Corporation with its principal place of business at 1200 Wilson Drive, West Chester, PA 19380.

QVC does business in this jurisdiction through, among others, its ecommerce website

www.QVC.com. This case arises out of QVC's business in Texas, but, on information and

belief, QVC does not maintain a regular place of business in Texas, nor does it have a designated

agent for the service of process of Texas. Defendant QVC may therefore be served with process

by serving the Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute,

Texas Civil Practice & Remedies Code § 17.044 and asking the Secretary of State to serve QVC

at its principal place of business at 1200 Wilson Drive, West Chester, PA 19380 via Certified

Mail – Return Receipt Requested.

17.     On information and belief, Shutterfly, Inc. ("Shutterfly") is a Delaware corporation with its principal place of business at 2800 Bridge Parkway, Suite 101, Redwood City, CA 94065. Shutterfly does business in this jurisdiction through its ecommerce website www.shutterfly.com. This case arises out of Shutterfly's business in Texas, but, on information and belief, Shutterfly does not maintain a regular place of business in Texas, nor does it have a designated agent for the service of process in Texas. Defendant Shutterfly may therefore be served with process by serving the Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and asking the Secretary of State to serve Shutterfly at its principal place of business at 2800 Bridge Parkway, Suite 101, Redwood City, CA 94065 via Certified Mail – Return Receipt Requested.

18.     On information and belief, Victoria's Secret Stores Brand Management, Inc. ("VS Stores") is a Delaware corporation with its principal place of business at Four Limited Parkway East, Reynoldsburg, OH, 43068. VS Stores does business in this jurisdiction through, among others, the ecommerce website www.victoriassecret.com. This case arises out of VS Stores' business in Texas, but, on information and belief, VS Stores does not maintain a regular place of business in Texas, nor does it have a designated agent for the service of process in Texas. Defendant VS Stores may therefore be served with process by serving the Secretary of State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and asking the Secretary of State to serve VS Stores at: General Counsel's Office, c/o Limited Brands, Inc., Three Limited Parkway, Columbus, OH 43216 via Certified Mail – Return Receipt Requested.

19.     On information and belief, Victoria's Secret Direct Brand Management, LLC ("VS Direct") is a Delaware limited liability company with its principal place of business at Five

8

Limited Parkway East, Reynoldsburg, OH 43068. VS Direct does business in this jurisdiction

through, among others, the ecommerce website www.victoriassecret.com. On information and

belief, VS Direct is a wholly-owned subsidiary of Defendant VS Stores. This case arises out of

VS Direct's business in Texas, but, on information and belief, VS Direct does not maintain a

regular place of business in Texas, nor does it have a designated agent for the service of process

in Texas. Defendant VS Direct may therefore be served with process by serving the Secretary of

State of the State of Texas pursuant to the Texas Long Arm Statute, Texas Civil Practice &

Remedies Code § 17.044 and asking the Secretary of State to serve VS Direct at its principal

place of business at: General Counsel's Office, c/o Limited Brands, Inc., Three Limited

Parkway, Columbus, OH 43216 via Certified Mail – Return Receipt Requested.

20.     On information and belief, VistaPrint Ltd. ("VistaPrint") is an entity organized

and existing under the laws of Bermuda with a principal place of business at Canon's Court, 22

Victoria Street, Hamilton, HM 12 Bermuda. VistaPrint does business in this jurisdiction through

its ecommerce website www.vistaprint.com. VistaPrint may be served in accordance with the

terms of the Hague Convention at its principal place of business.

21.     On information and belief, VistaPrint USA, Inc. ("VistaPrint USA") is a

Delaware corporation with a principal place of business at 95 Hayden Avenue, Lexington, MA

02421. VistaPrint USA does business in this jurisdiction through the ecommerce website

www.vistaprint.com. On information and belief, VistaPrint USA is a wholly-owned subsidiary

of Defendant VistaPrint. This case arises out of VistaPrint USA's business in Texas, but, on

information and belief, VistaPrint USA does not maintain a regular place of business in Texas,

nor does it have a designated agent for the service of process in Texas. VistaPrint USA may

therefore be served with process by serving the Secretary of State of the State of Texas pursuant

to the Texas Long Arm Statute, Texas Civil Practice & Remedies Code § 17.044 and asking the

Secretary of State to serve VistaPrint USA at its principal place of business at 95 Hayden

Avenue, Lexington, MA 02421 via Certified Mail – Return Receipt Requested.

## JURISDICTION AND VENUE

22.    This action arises under the patent laws of the United States, Title 35, United

States Code. The jurisdiction of this Court over the subject matter of this action is proper under

28 U.S.C. § 1338.

23.    Personal jurisdiction exists over Defendants because they do business in Texas

and infringing acts giving rise to this action have occurred in Texas and in this district.

24.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and

1400(b).

## PATENTS-IN-SUIT

25.    Plaintiff Soverain is the owner of all right, title and interest in United States

Patent No. 5,715,314 entitled "Network Sales System" ("the '314 patent"). The '314 patent was

duly and properly issued by the United States Patent and Trademark Office ("PTO") on February

3, 1998. The '314 patent was assigned to Plaintiff Soverain. The PTO has reexamined the '314

patent and issued *Ex Parte* Reexamination Certificate No. 5,715,314 C1 on October 9, 2007. A

copy of the '314 patent is attached hereto as Exhibit A. A copy of the *Ex Parte* Reexamination

Certificate No. 5,715,314 C1 is attached as exhibit B.

26.    Plaintiff Soverain is the owner of all right, title and interest in United States

Patent No. 5,909,492 entitled "Network Sales System" ("the '492 patent"). The '492 patent was

duly and properly issued by the PTO on June 1, 1999. The '492 patent was assigned to Plaintiff

Soverain. The PTO has reexamined the '492 patent and issued *Ex Parte* Reexamination

Certificate No. 5,909,492 C1 on August 7, 2007. A copy of the '492 Patent is attached hereto as

Exhibit C. A copy of *Ex Parte* Reexamination Certificate No. 5,909,492 C1 is attached as Exhibit D.

27.    Plaintiff Soverain is the owner of all right, title and interest in United States Patent No. 7,272,639 entitled "Internet Server Access Control and Monitoring Systems" ("the '639 patent"). The '639 patent was duly and properly issued by the PTO on September 18, 2007. The '639 patent was assigned to Plaintiff Soverain. A copy of the '639 patent is attached hereto as Exhibit E.

<div align="center">INFRINGEMENT OF THE PATENTS-IN-SUIT BY J.C. PENNEY</div>

28.    Defendant J.C. Penney, through its ecommerce website(s), has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

29.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant J.C. Penney was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

30.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant J.C. Penney and will continue to be damaged by such infringement.

31.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless J.C. Penney is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY AMWAY

32.     Defendant Amway, through its ecommerce website(s), has infringed and
continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the
'314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a)
making, using, offering for sale or selling within the United States products or processes that
practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or
sell within the United States, products or processes that practice inventions claimed in those
patents; or (c) contributing to the making, using, offering for sale or selling within the United
States, products or processes that practice inventions claimed in those patents.

33.     On information and belief, and after a reasonable opportunity for further
investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant
Amway was aware of the patents-in-suit prior to the filing of this Complaint and that its
infringement of the patents-in-suit has been and continues to be willful.

34.     Plaintiff Soverain has been damaged by the infringement of its patents by
Defendant Amway and will continue to be damaged by such infringement.

35.     Plaintiff Soverain has suffered and continues to suffer irreparable harm and will
continue to do so unless Amway is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY AVON

36.     Defendant Avon, through its ecommerce website(s) has infringed and continues to
infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent,
at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using,
offering for sale or selling within the United States products or processes that practice inventions
claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United
States, products or processes that practice inventions claimed in those patents; or (c) contributing

to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

37.     On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Avon was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

38.     Plaintiff Soverain has been damaged by the infringement of its patents by Defendant Avon and will continue to be damaged by such infringement.

39.     Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless Avon is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY BIDZ.COM

40.     Defendant Bidz.com, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

41.     On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Bidz.com was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

42.     Plaintiff Soverain has been damaged by the infringement of its patents by

Defendant Bidz.com and will continue to be damaged by such infringement.

43.     Plaintiff Soverain has suffered and continues to suffer irreparable harm and will

continue to do so unless Bidz.com is enjoined therefrom by this Court.

### INFRINGEMENT OF PATENTS IN SUIT BY ETRONICS

44.     Defendant Etronics through its ecommerce website(s) has infringed and continues

to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314

patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making,

using, offering for sale or selling within the United States products or processes that practice

inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within

the United States, products or processes that practice inventions claimed in those patents; or (c)

contributing to the making, using, offering for sale or selling within the United States, products

or processes that practice inventions claimed in those patents.

45.     On information and belief, and after a reasonable opportunity for further

investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant

Etronics was aware of the patents-in-suit prior to the filing of this Complaint and that its

infringement of the patents-in-suit has been and continues to be willful.

46.     Plaintiff Soverain has been damaged by the infringement of its patents by

Defendant Etronics and will continue to be damaged by such infringement.

47.     Plaintiff Soverain has suffered and continues to suffer irreparable harm and will

continue to do so unless Etronics is enjoined therefrom by this Court.

### INFRINGEMENT OF PATENTS IN SUIT BY HSN

48.     Defendant HSN, through its ecommerce website(s) has infringed and continues to

infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent,

14

at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

49. On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant HSN was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

50. Plaintiff Soverain has been damaged by the infringement of its patents by Defendant HSN and will continue to be damaged by such infringement.

51. Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless HSN is enjoined therefrom by this Court.

### INFRINGEMENT OF PATENTS IN SUIT BY HSN IMPROVEMENTS

52. Defendant HSN Improvements, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

53.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant HSN Improvements was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

54.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant HSN Improvements and will continue to be damaged by such infringement.

55.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless HSN Improvements is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY CORNERSTONE

56.    Defendant Cornerstone, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

57.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Cornerstone was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

58.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant Cornerstone and will continue to be damaged by such infringement.

16

59.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless Cornerstone is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY BALLARD

60.    Defendant Ballard, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

61.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Ballard was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

62.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant Ballard and will continue to be damaged by such infringement.

63.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless Ballard is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY GARNET HILL

64.    Defendant Garnet Hill, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that

practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

65.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Garnet Hill was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

66.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant Garnet Hill and will continue to be damaged by such infringement.

67.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless Garnet Hill is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY S+N

68.    Defendant S+N, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

69.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant

S+N was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

70.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant S+N and will continue to be damaged by such infringement.

71.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless S+N is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY TTA

72.    Defendant TTA, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

73.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant TTA was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

74.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant TTA and will continue to be damaged by such infringement.

75.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless TTA is enjoined therefrom by this Court.

## INFRINGEMENT OF THE PATENTS IN SUIT BY QVC

76.    Defendant QVC, through its ecommerce website(s), has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

77.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant QVC was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

78.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant QVC and will continue to be damaged by such infringement.

79.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless QVC is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY SHUTTERFLY

80.    Defendant Shutterfly, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those

patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

81.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant Shutterfly was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

82.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant Shutterfly and will continue to be damaged by such infringement.

83.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless Shutterfly is enjoined therefrom by this Court.

### INFRINGEMENT OF THE PATENTS IN SUIT BY VS STORES

84.    Defendant VS Stores, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

85.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant VS Stores was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

86.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant VS Stores and will continue to be damaged by such infringement.

87.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless VS Stores is enjoined therefrom by this Court.

### INFRINGEMENT OF THE PATENTS IN SUIT BY VS DIRECT

88.    Defendant VS Direct, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

89.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant VS Direct was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

90.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant VS Direct and will continue to be damaged by such infringement.

91.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless VS Direct is enjoined therefrom by this Court.

### INFRINGEMENT OF PATENTS IN SUIT BY VISTAPRINT

92.    Defendant VistaPrint, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the

22

'314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

93.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant VistaPrint was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

94.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant VistaPrint and will continue to be damaged by such infringement.

95.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless VistaPrint is enjoined therefrom by this Court.

## INFRINGEMENT OF PATENTS IN SUIT BY VISTAPRINT USA

96.    Defendant VistaPrint USA, through its ecommerce website(s) has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 34 of the '314 patent, at least claim 17 of the '492 patent, and at least claim 1 of the '639 patent by: (a) making, using, offering for sale or selling within the United States products or processes that practice inventions claimed in those patents; (b) inducing others to make, use, offer for sale or sell within the United States, products or processes that practice inventions claimed in those patents; or (c) contributing to the making, using, offering for sale or selling within the United States, products or processes that practice inventions claimed in those patents.

97.    On information and belief, and after a reasonable opportunity for further investigation or discovery, it is likely that Plaintiff will have evidentiary support that Defendant VistaPrint USA was aware of the patents-in-suit prior to the filing of this Complaint and that its infringement of the patents-in-suit has been and continues to be willful.

98.    Plaintiff Soverain has been damaged by the infringement of its patents by Defendant VistaPrint USA and will continue to be damaged by such infringement.

99.    Plaintiff Soverain has suffered and continues to suffer irreparable harm and will continue to do so unless VistaPrint USA is enjoined therefrom by this Court.

## RELIEF REQUESTED

Wherefore, Plaintiff Soverain respectfully requests that this Court enter judgment against Defendants J.C. Penney, Amway, Avon, Bidz.com, Etronics, HSN, HSN Improvements, Cornerstone, Ballard, Garnet Hill, S+N, TTA, QVC, Shutterfly, VS Stores, VS Direct, VistaPrint and VistaPrint USA as follows:

A.    That each of the Patents in Suit is not invalid and enforceable;

B.    That each of the Defendants infringes each of the Patents in Suit;

C.    An order entering a preliminary and permanent injunction enjoining each of the defendants, their officers, agents, employees, and those persons acting in concert or participation with all or any of them from infringing, inducing the infringement of, or contributorily infringing any of the Patents in Suit;

D.    An award of damages adequate to compensate Plaintiff Soverain for the patent infringement that has occurred, together with pre-judgment interest and costs;

E.    An order declaring that Plaintiff is a prevailing party and that this is an exceptional case, awarding Soverain its costs, expenses, disbursements and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and an

award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to

three times the amount of compensatory damages found; and

    F.    Such other relief as this Court deems just and proper.

Dated: June 25, 2009.                          Respectfully submitted,


By: _____
    Michael C. Smith (Texas Bar. No. 18650410)
    michaelsmith@siebman.com
    SIEBMAN, REYNOLDS, BURG, PHILLIPS &
    SMITH, LLP
    713 South Washington Avenue
    P.O. Box 1556
    Marshall, Texas, 75671
    Telephone: (903) 938-8900
    Facsimile: (972) 767-4620

    Edward J. DeFranco (Bar No. )
    eddefranco@quinnemanuel.com
    James M. Glass (Bar No. )
    jimglass@quinnemanuel.com
    Carlos A. Rodriguez (Bar No. )
    carlosrodriguez@quinnemanuel.com
    QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Telephone: (212) 849-7000
    Facsimile: (212) 849-7100

    David A. Nelson (Bar No. )
    davenelson@quinnemanuel.com
    Michael Harte (Bar No. 6272364)
    mikeharte@quinnemanuel.com
    QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP
    250 South Wacker Drive, Suite 230
    Chicago, Illinois  60606-6301
    Telephone: (312) 463-2961
    Facsimile: (312) 463-2962

    Attorneys for Plaintiff Soverain Software LLC

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     LEGAL STANDARD...............................................................................................3

III.    U.S. PATENT NOS. 5,715,314 AND 5,909,492 ...................................................4

        A.      Technology Background ...............................................................................4

        B.      Construction of Disputed Claim Terms .......................................................5

                1.      "buyer computer for operation by a user"........................................5

                2.      "client computer for operation by a client user"..............................6

                3.      "collection" .......................................................................................7

                4.      "network-based sales system"..........................................................8

                5.      "payment computer" ..........................................................................9

                6.      "payment message" ...........................................................................9

                7.      "plurality" .......................................................................................10

                8.      "plurality of respective products / plurality of products [added to
                        said/the shopping cart]" .................................................................11

                9.      "shopping cart computer" ...............................................................12

                10.     "shopping cart message"..................................................................13

                11.     "universal resource locator".............................................................14

IV.     U.S. PATENT NO. 7,272,639 ...............................................................................15

        A.      Technology Background.............................................................................15

        B.      Construction of Disputed Claim Terms .....................................................16

                1.      "appending the stored session identifier to each of the subsequent
                        distinct requests"............................................................................16

                2.      "a service request to which a session identifier stored at the client
                        has been appended by the client".....................................................17

                3.      "session identifier" .........................................................................18

4. "session identifier appended to the service request / appended session identifier"...................................................................................18

5. "stored session identifier" ........................................................................19

6. "validating the session identifier appended to the service request"...........21

V. CONCLUSION......................................................................................................22

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amgen, Inc. v. Hoechst Marion Roussel,*
    314 F.3d 1313 (Fed. Cir. 2003)..................................................................................3, 29

*Bicon, Inc. v. The Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006)..................................................................................18

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
    246 F.3d 1336 (Fed. Cir. 2001)..................................................................................5

*Finisar Corp. v. DirecTV Group, Inc.,*
    523 F.3d 1323 (Fed. Cir. 2008)..................................................................................4

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)..................................................................................3

*Nazomi Commc'ns, Inc. v. ARM Holdings, PLC,*
    403 F.3d 1364 (Fed. Cir. 2005)..................................................................................3

*Oatey Co. v. IPS Corp.,*
    514 F.3d 1271 (Fed. Cir. 2008)..................................................................................24

*Orion IP, LLC v. Staples, Inc.,*
    406 F. Supp. 2d 717 (E.D. Tex. 2005)..................................................................................13

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................................2, 3, 4, 19, 27

*Pitney Bowes Inc. v. Hewlett-Packard Co.,*
    182 F.3d 1298 (Fed. Cir. 1999)..................................................................................2, 11

*SRAM Corp. v. AD-II Eng'g, Inc.,*
    465 F.3d 1351 (Fed. Cir. 2006)..................................................................................28

*Stumbo v. Eastman Outdoors, Inc.,*
    508 F.3d 1358 (Fed. Cir. 2007)..................................................................................18

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.,*
    264 F.3d 1111 (Fed. Cir. 2001)..................................................................................6

*Voda v. Cordis Corp.,*
    536 F.3d 1311 (Fed. Cir. 2008)..................................................................................29

## I. INTRODUCTION

Plaintiff Soverain Software LLC ("Soverain") respectfully submits this revised opening brief in support of its proposed constructions of disputed terms and phrases in the asserted claims of the patents-in-suit – U.S. Patent Nos. 5,715,314 ("the '314 patent"), 5,909,492 ("the '492 patent"), and 7,272,639 ("the '639 patent").[1]

This case is not a blank slate. It follows two earlier cases before this Court involving the same or related patents to the patents at issue here. The Court has extensive experience with these patents and has already construed numerous terms in the asserted claims.

In *Soverain Software LLC v. Amazon.com, Inc.*, 6:04-cv-00014 ("*Amazon*"), the Court construed 20 terms in the claims of the '314 and '492 patents, and 14 terms in the claims of U.S. Patent No. 5,708,780 – the parent of the '639 patent. Ex. A., *Amazon* D.I. 246. The Court reviewed extensive briefing from the parties, heard oral argument during a *Markman* hearing, and issued a comprehensive order explaining the Court's analysis of the intrinsic and extrinsic evidence, the arguments of the parties, and the bases for the Court's rulings. Subsequently, in *Soverain Software LLC v. Newegg Inc.*, 6:07-cv-00511 ("*Newegg*"), the Court adopted the parties' agreed constructions for 29 terms in the claims of the '314, '492, and '639 patents, and otherwise reaffirmed its constructions in *Amazon*. Exs. B and C, *Newegg* D.I. 192, 214.

In the first P.R. 4-3 statement filed in this case, Defendants disputed the meaning of 23 terms from the '314 and '492 patents, and 8 terms from the '639 patent. During two meet and

---

[1] Pursuant to the Court's Docket Control Order (D.I. 175), Soverain originally filed its opening claim construction brief on September 20, 2010. On October 1, 2010, after reviewing the parties' P.R. 4-3 statement, the Court entered an Order directing the parties to meet and confer to "narrow the number of disputed terms to a reasonable number," and to submit an amended P.R. 4-3 statement by October 6, 2010. (D.I. 271). The Court's Order provides that Soverain may file this revised opening claim construction brief by October 8, 2010. The Court also extended the deadlines for Defendants' opposition brief and Soverain's reply brief to October 15 and October 22, 2010, respectively.

confer conferences between the parties, on October 5 and 6, Defendants agreed with Soverain that 12 of these terms do not require construction, but should simply be understood according to their plain and ordinary meaning. For two additional terms, "computer" and "message," Defendants agreed to adopt the Court's construction in the *Amazon* case – as proposed by Soverain – subject to Defendants' right to appeal based on the record in *Amazon*.

Despite this progress in narrowing the issues, 17 terms remain in dispute. For many of these terms, Defendants ask the Court to ignore its earlier rulings and re-construe terms that the Court has already analyzed and construed in the earlier cases. Defendants, however, fail to identify any flaw in the Court's earlier reasoning. Instead, Defendants merely rehash arguments that the Court has already considered and rejected. Defendants brush aside the Court's earlier rulings and attempt to start from scratch in a waste of the Court's time and resources.

Defendants also dispute the construction of certain terms that should simply be understood in terms of their plain and ordinary meaning. Defendants attempt to read additional limitations into many of these disputed terms by piling on elaborate definitions that are found nowhere in the intrinsic evidence. For other terms, Defendants attempt to limit the claims to a preferred embodiment or to read express limitations from the dependent claims into the independent claims, violating some of the most fundamental principles of claim construction.[2]

As discussed in more detail below, the Court should continue to rely on its constructions of terms that have already been applied in prior cases. With respect to the additional terms that Defendants dispute, the plain and ordinary meaning either requires no construction or is readily

---

[2] Defendants' scattershot approach to claim construction is exemplified by the fact that for many of the disputed limitations, Defendants cannot even agree among themselves as to a consistent meaning for the disputed term. In those instances, Defendants propose two, and sometimes three, alternative constructions.

found in the intrinsic evidence. Thus, Soverain respectfully requests that the Court adopt its proposed constructions of the disputed claim terms as set forth below.

## II.    LEGAL STANDARD

The Court is familiar with the applicable legal framework for claim construction, for example, as discussed in the Court's earlier Memorandum Opinion in *Amazon*. Ex. A, *Amazon* D.I. 246 at 2-5. As the Court recognized in that case, "[t]he starting point for any claim construction must be the claims themselves." *Pitney Bowes Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). "[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. When the ordinary meaning of the claim language is readily apparent, claim construction may involve "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

"[T]he specification is always highly relevant to the claim construction analysis" and is considered "the single best guide to the meaning of a disputed term." *Id.* "[A]lthough the specification often describes very specific embodiments of the invention, [the court has] repeatedly warned against confining the claims to those embodiments." *Id.* at 1323; *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005). "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). At the same time, a construction that would exclude

3

one or more of the preferred embodiments from the scope of the claims "is rarely, if ever, correct." *Amgen, Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

Additionally, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.* "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

Finally, the Court may rely on extrinsic evidence, such as dictionaries or expert testimony, to provide background on the technology at issue, to explain how an invention works, or to explain the meaning of a term as it would be understood by a person of ordinary skill in the art. *See Phillips*, 415 F.3d at 1317-18. But extrinsic evidence cannot be used to contradict the intrinsic evidence. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

## III.     U.S. PATENT NOS. 5,715,314 AND 5,909,492

### A.     Technology Background

The '314 patent is directed to a computerized sales system that allows a user to shop over an online network and pay electronically. As the Court is aware, the claimed system includes a virtual "shopping cart" feature that is now ubiquitous on e-commerce websites across the Internet. The patented sales system includes a buyer computer for operation by a user who purchases products online. The user selects the desired products and places them in a shopping cart, which is stored in a shopping cart database. When ready to check out, the user initiates an electronic transaction to pay for the selected products.

The '492 patent is directed to additional features of the disclosed sales system.[3] For example, the systems described in the '492 claims utilize "smart" hypertext statement documents, which allow the user to track past purchase transactions.

For the Court's convenience, the text of the asserted claims of the patents-in-suit, with the disputed terms shown in bold, is attached at Exhibit F. Soverain's proposed constructions and citations in support of those construction are attached at Exhibit L.

### B. Construction of Disputed Claim Terms

#### 1. "buyer computer for operation by a user"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>A computer for operation by a user desiring to buy products | A physical personal computer for home-use to be used by a user-buyer | ordinary meaning / no construction necessary |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. The language in this term does not require construction. In the alternative, Soverain proposes a straightforward construction based on the plain and ordinary meaning.

Defendants' First Proposal should be rejected because it amounts to an unwarranted rewriting of the claims. There is no support in the intrinsic evidence for limiting the "buyer computer" to a "personal computer for home-use." This would improperly exclude, for example, a business computer used at work.

Similarly, rewriting "user" as "user-buyer" is unwarranted, as it would improperly exclude, for example, a user operating the buyer computer on behalf of another. Indeed, the '314

---

[3] The '314 and '492 patents are related and share a common specification. *See* Ex. D, '314 patent; Ex. E, '492 patent.

and '492 patents consistently distinguish the terms "user" and "buyer" throughout the specification and claims. *E.g.*, *compare* Ex. D at col. 1, ll. 50-52 ("the invention provides a network-based sales system that includes at least one buyer computer for operation by a *user* desiring to buy a product") *with* col. 4, ll. 50-52 ("The products advertised by merchant computer 14 may be, for example, newspaper or newsletter articles available for purchase by *buyers*."). By contrast, the term "buyer-user" is never used in the '314 and '492 patents. Defendants' First Proposal attempts to read this extraneous limitation into the claims, which only confuses, rather than clarifies, the meaning of the recited term. Nothing in the intrinsic evidence warrants departing from the plain and ordinary meaning of "user" and "buyer" to make them synonymous.

### 2. "client computer for operation by a client user"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning | Buyer computer operated by a user |
| *Alternatively:* A computer capable of requesting a service of another computer or computer system | |

This term appears in claims 15, 16, 39, 40, 66, 68, 73, 74, 92, 95, 96, and 101 of the '492 patent. The term has a plain and ordinary meaning that does not require construction. Alternatively, Soverain proposes a construction based on the plain meaning of this term to a person of ordinary skill in the art.

At the time the inventions were made, a person of ordinary skill would have understood the term "client" in the context of the asserted claims to mean "a computer system or process that requests a service of another computer system or process (a "server") using some kind of protocol, and accepts the server's responses." *See, e.g.*, Ex. H, FOLDOC – Free On-Line Dictionary of Computing, at http://foldoc.org/ (definition of "client" dated October 27, 1997).

Nothing in the intrinsic evidence supports Defendants' attempt to depart from the plain and ordinary meaning of "client" to equate it with "buyer." Indeed, the '492 patent never uses these terms interchangeably, as the Defendants now ask the Court to do, but instead, consistently uses the term "client" in a broader context throughout the specification and claims.

### 3. "collection"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Zero, one or more [products] | Two or more |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. In *Amazon*, the Court adopted Soverain's proposed construction of "collection," and expressly rejected the construction of "two or more" that Defendants propose again here:

> Soverain contends that "collection" could mean zero, one, two, or more products. Although one claim limitation requires that payment be made for a "plurality of products," the claims do not require that the shopping cart always contain multiple, or any, products. *See* '314 Patent, claim 34. From this distinction the Court finds "collection" does not necessarily mean at least two, but can refer to zero, one, or more products. Ex. A, *Amazon* D.I. 246 at 19-20.

Defendants urge the Court to adopt a construction that it has already considered and rejected. As the Court recognized in *Amazon*, "the patentee acted as his own lexicographer and defined 'shopping cart' to mean 'a stored representation of a collection of products." *Id*. at 19. But that definition does not mean that the shopping cart must always contain two or more products, as Defendants' construction would require. *See id*. at 20. Instead, the shopping cart described in the '314 and '492 patents may contain one product or no products at all. *Id*. Understood in that context, the term "collection" means "zero, one or more," and should not limited to shopping carts with only "two or more" products, as the Court earlier ruled in *Amazon*. Defendants have not (and cannot) identify any flaw in the Court's reasoning that would require the Court to modify its prior construction.

7

### 4. "network-based sales system"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| This term appears only in the preamble of the asserted claims and is not limiting.<br><br>Therefore, it does not require construction. | A system that includes at least one buyer computer for operation by a user desiring to buy a product, at least one merchant computer, and at least one payment computer. The buyer computer, the merchant computer, and the payment computer are interconnected by a computer network. | ordinary meaning / no construction necessary |

This term appears in the preamble of claims 34-36, 50, and 84 of the '314 patent, and claims 17 and 35 of the '492 patent. The preamble of a claim is ordinarily not limiting. The preamble should only be construed if "read in the context of the entire claim, [the preamble] recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim[.]" *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).

Here, the preamble of the claims at issue recites "[a] network-based sales system." Following the preamble, each claim sets forth the required features of the claimed system. The preamble in this instance merely introduces the general subject matter of the claims, and is not necessary to give life or meaning to them.

Defendants' First Proposal attempts to pack as many limitations into this one term as possible, disregarding the actual words used in this term and the features of the systems expressly recited in each asserted claim. In this way, Defendants' First Proposal renders the language of the actual claim terms meaningless. For example, claim 19 of the '492 patent requires a "payment computer," but asserted claims 17 and 35 do not. Defendants' First Proposal impermissibly attempts to eliminate the distinctions recited in these different claims with a forced redrafting of the short, introductory term used in the preamble.

### 5.   "payment computer"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| A computer processing payment information | Computer that accesses and debits buyer funds or credit used in payment transactions | Shopping cart computer |

This term appears in claim 40 of the '492 patent. The Court considered the meaning of "payment computer" in *Amazon*, and adopted Soverain's proposed construction of this term:

> The Court defines "payment computer" to mean "a computer processing payment information." Although the parties agree that "payment computer" does not have an ordinary and customary meaning in the art, the term "payment" has an ordinary and customary meaning, and the Court has already construed the term "computer." Accordingly, the Court is able to infer the phrase's meaning from the ordinary meaning of payment and the construed meaning of computer without importing limitations from the specification. . . . Amazon's proposed construction, which cobbles together descriptions from the specification, requires the payment computer to "accept and verify payment by the buyer, and authorize purchase of products from the merchant." Such a construction impermissibly reads in limitations from the specification. Ex. A, *Amazon* D.I. 246 at 16-17.

Here, Defendants' First Proposal "cobbles together" terms found only in certain embodiments disclosed in the specification, akin to the construction that the Court rejected in *Amazon*. Defendants' Second Proposal seeks to rewrite this straightforward term altogether by replacing "payment computer" with "shopping cart computer." The Court should reject both proposed departures from its prior ruling.

### 6.   "payment message"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| a message relating to a payment for one or more products | a message relating to a payment for one or more products, containing an authenticated user's payment information and sent to the buyer computer | A message enabling payment for one or more products |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, 134, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. In *Amazon*, the Court adopted Soverain's proposed construction:

Claim 1 of the '314 patent states, "A network based sales system, comprising: . . . a payment message to be sent to said payment computer that comprises a product identifier identifying said product." As described here, the payment message is not required to contain a cryptographic key. Claim 33 of the '314 patent also does not require a cryptographic key as part of the payment message[.] In claims 27 and 28, which are dependent on claims 19 and 27 respectively, the payment message includes a payment message authenticator based on a cryptographic key. Ex. A, *Amazon* D.I. 246 at 15.

Defendants' First Proposal, like the rejected proposal in *Amazon*, attempts to import limitations from certain preferred embodiments disclosed in the specification. As the Court pointed out in *Amazon*, some claims require authentication in connection with the payment message, while others do not. The claims asserted here do not. Similarly, Defendants' Second Proposal should be rejected because none of the asserted claims require the payment message to "enable" anything, contrary to Defendants' alternative proposed construction.

### 7. "plurality"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning | Two or more |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. The term has a plain and ordinary meaning that does not require construction. Also, this term appears in different contexts in the claims, and it is not clear in what context Defendants seek to construe the term. For example, Defendants separately ask the Court to construe the term "plurality of respective products," which is discussed in the next section below. For these reasons, a separate construction of this term, out of context, would be confusing and unhelpful to the trier of fact. *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (Davis, J.) (noting that although "every word used in a claim has meaning, not every word requires construction.").

### 8. "plurality of respective products / plurality of products [added to said/the shopping cart]"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| product identifiers which are added to an instance of a shopping cart in the shopping cart database / [add] identifiers of respective products to an instance of a shopping cart | Two or more products, identified by two or more respective product identifiers |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. Soverain's proposed construction incorporates the Court's earlier constructions in *Amazon* for the terms "plurality of products added" and "[add a] plurality of respective products to a shopping cart." Ex. A, *Amazon* D.I. 246 at 20. Defendants' proposal departs from the Court's prior constructions by reading in additional limitations that require "two or more products" to be "identified by two or more respective product identifiers." This unduly restrictive construction is unwarranted for at least two reasons.

First, Defendants' proposal suggests that only one product identifier can be used to identify each product. There is no support for such a limitation in the intrinsic evidence. For example, a merchant may wish to offer a particular product at a regular price to some customers, and at discounted price to others. The merchant may associate one product identifier with the regular price, and a different product identifier with the discounted price. One of these product identifiers will be added to the shopping cart, depending on the price offered to the customer. Nothing in the claims or specification of the '314 or '492 patents requires that only one product identifier may be associated with each product in order to practice the claimed inventions.

Second, Defendants' proposal suggests that the claims require each transaction to involve "two or more products." As the Court held in *Newegg*, however, the system claims incorporating this term are infringed even when buyers purchase a single product, as long as the system is *capable* of receiving more than one request:

11

As stated above in addressing infringement, "to infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the *capability* of functioning as described by the claim." Ex. I, *Newegg* D.I. 434 at 17-18 (emphasis added, citation omitted); *see also id.* at 17-18.

Defendants' proposal is unduly limiting to the extent that it is intended to exclude from the scope

of the claims transactions involving only one product.

### 9. "shopping cart computer"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| a computer processing data associated with one or more shopping carts | A computer that modifies the shopping carts in the shopping cart database, operated by the manager of a network sales system | A computer that modifies the shopping carts in the shopping cart database |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314

patent, and claims 17, 18, 35, and 36 of the '492 patent. In *Amazon* and *Newegg*, the Court

adopted the parties' agreed construction of this term, which Soverain proposes here. Ex. A,

*Amazon* D.I. 246 at 28; Ex. C, *Newegg* D.I. 214 at 2.

Defendants' First Proposal should be rejected because it would confuse the trier of fact

by adding an unsupported limitation that the computer must be "operated by the manager of a

network sales system." This is a term that has no clearly defined meaning in the context of the

'314 and '492 patents. None of the asserted claims recite a "manager of a network sales

system." And, as discussed above, the phrase "network-based sales system" appears only in the

non-limiting preamble of certain claims. Accordingly, Defendants' First Proposal would not

only rewrite the claims to add a "manager" limitation, but would also restrict operation of the

shopping cart computer to such a manager. Nothing in the claim language or other intrinsic

evidence justifies the addition of that limitation. Moreover, without an antecedent basis for

"manager," Defendants' First Proposal would also potentially render these claims indefinite.

Defendants' Second Proposal should be rejected because it is also likely to confuse the trier of fact. The claims already recite that "the shopping cart computer [is] a computer that modifies the stored representations of collections of products in the database." Thus, Defendants' Second Proposal is unnecessarily redundant and circular in that it repeats several express limitations already found in the asserted claims.

### 10. "shopping cart message"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| a message concerning a shopping cart | A message containing an authenticator based on a cryptographic key, whose authentication indicates that the user has authority to modify a shopping cart |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. Soverain's proposed construction was adopted by the Court in *Amazon*, and is based on the plain and ordinary meaning. Ex. A, *Amazon* D.I. 246 at 14.

Defendants' proposal attempts to incorporate a "cryptographic key" into the definition of this term, a construction that the Court earlier rejected in *Amazon*. Ex. A, *Amazon* D.I. 246 at 14-16. As the Court explained, where it is required that certain messages contain cryptographic key-based authenticators, the claims expressly recite that limitation. In particular, the Court recognized that "[c]laim 34 of the '314 patent does not require shopping cart messages to include cryptographic keys." *Id.* at 15. Likewise, the term "shopping cart messages" is used in claims 17, 18, 35, and 36 of the '492 patent, "none of which state it includes a cryptographic key." *Id.* Defendants' attempt to read in this limitation from certain dependant claims runs afoul of the fundamental principle of claim differentiation. As in *Amazon*, the claims asserted here are not limited to "an authenticator based on a cryptographic key," and the Court should reject Defendants' renewed attempt to rewrite them.

13

### 11. "universal resource locator"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| The global address of documents and other resources on the Worldwide Web, also known as URL | Uniform resource locator (URL): An address for a resource on the Internet |

This term appears in claims 17 and 18 of the '492 patent. The principal difference between the parties' proposals is that Defendants construe the term broadly as any address for a resource on the Internet, while Soverain's proposal is narrower in that it is directed to resources specifically on the Worldwide Web. The parties disagree whether the term "universal resource locator" ("URL"), as used in the '492 patent, refers to the mid-1990s understanding of URL in the context of the Worldwide Web, or as a reference to something more generally associated with the pre-Web Internet, as Defendants now urge.

The Court should adopt Soverain's proposal because it is consistent with the use of the term URL throughout the intrinsic record and how that term would have been understood by a person of ordinary skill in the art at the time of the invention. Soverain's proposal clarifies that a URL is the address of a resource on the Worldwide Web. In other words, a URL is an address that a user could type into a Web browser to access the resource.

A person of ordinary skill in the art, reading the claims in the context of the specification, would understand the term as construed by Soverain. The Internet existed for many years before the Worldwide Web was invented. The specification explains that a URL is an example of a "link," a term associated with the Worldwide Web, but not with any other aspect of the Internet:

> The term "URL" as used the present application is an example of a "link," which is a pointer to another document or form (including multimedia documents, hypertext documents including other links, or audio/video documents).

Ex. E, col. 9, ll. 59-63. Likewise, Figures 5-14 of the '492 patent illustrates different aspects of the disclosed embodiments as seen through a Web browser.

The '639 patent also describes URLs as addresses for resources on the Worldwide Web, confirming that this is how a person of ordinary skill would have understood the term in the mid-1990s timeframe:

> For example, links may be visually displayed as words or phrases that may be underlined or displayed in a second color. Each link is directed to a web page by using a special name called a URL (Uniform Resource Locator). URLs enable a Web browser to go directly to any file held on any Web server. A user may also specify a known URL by writing it directly into the command line on a Web page to jump to another Web page. Ex. J, '639 patent at col. 2, ll. 18-25.

Finally, the dictionary definition that Defendants rely on actually supports Soverain's proposed construction. That dictionary defines URL as "an address for a resource on the Internet," but immediately adds that "URLs are used *by Web browsers* to locate Internet resources." Ex. G at 6 (emphasis added).

## IV.   U.S. PATENT NO. 7,272,639

### A.   Technology Background

The '639 patent is directed to the control and monitoring of access to information on the Internet, and is applicable to processing service requests in a hypertext transfer protocol ("HTTP") environment, such as the World Wide Web. HTTP is said to be "stateless," that is, it does not keep track of communications exchanged between a user's computer and a website's server ("web server") during a given session (*e.g.*, e-commerce shopping). Accordingly, under HTTP, a web server cannot tell whether a series of communications from a client are part of the same session or different sessions.

The '639 patent discloses a method that allows a web server to recognize a series of inquiries (service requests) from the same client during an online session, and to control access to information without repeated authentication. The claimed method is based on the use of a session identifier that allows the web server to recognize requests that belong to the same session

and to distinguish among the requests of different sessions. This ability allows the web server to provide access to information resources that the user is authorized to access and to monitor the user's access.

## B. Construction of Disputed Claim Terms

### 1. "appending the stored session identifier to each of the subsequent distinct requests"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| tagging, adding, affixing or supplementing the stored session identifier to each of the subsequent distinct requests<br><br>Where "session identifier" means "a text string that identifies a session" | Tagging the stored session identifier to the address/URL of each of the subsequent distinct requests |

This term appears in claim 1, 10, 65, and 68 of the '639 patent. In *Amazon*, the Court construed an analogous term in the asserted claims of U.S. Patent No. 5,708,780 ("the '780 patent") – the parent of the '639 patent. Specifically, the Court construed the term "appending . . . [the session identifier] . . . as part of a . . . path name in a uniform resource locator" to mean "tagging, adding, affixing or supplementing [the session identifier] to the URL as part of a path name." Ex. A, *Amazon* D.I. 246 at 6. The Court's construction of "appending" to mean "tagging, adding, affixing or supplementing" is consistent with the plain and ordinary meaning of the term and the intrinsic record. Soverain's proposed construction incorporates the Court's prior ruling in *Amazon*.

Defendants' proposal adds the limitation that "requests" must include an "address/URL" to which the session identifier is tagged. That construction is contrary to the doctrine of claim differentiation. Claim 35, which depends on claim 1, recites that the session identifier is appended to a path name. Claim 36, which depends on claim 35, specifies that the path name is part of a link. Finally, claim 38, which depends on claim 36 recites that the link "comprises a

uniform resource locator." Accordingly, Defendants' proposal, which would import the URL
limitation from the dependent claims into independent claim 1, should be rejected.

      2.    **"a service request to which a session identifier stored at the client has
been appended by the client"**

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>A service request with which the client includes a session identifier stored at the client<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | A service request that includes an address/URL to which a session identifier stored at the client has been tagged by the client |

This term appears in claim 78 and 79 of the '639 patent. The term has a plain and
ordinary meaning that does not require construction. Alternatively, Soverain proposes a
construction of this term based on the plain and ordinary meaning, and in light of the Court's
earlier construction in *Amazon* of the terms "session" and "session identifier" in the claims of the
'780 patent. Ex. A, *Amazon* D.I. 246 at 6.

As discussed in Section IV.B.1, where the claims of the '639 patent require that
"requests" include an "address/URL," they explicitly recite that limitation. The Court should
reject Defendants' proposal because it requires the "service request" in claim 78 to "include[] an
address/URL," even though that limitation is found nowhere in the asserted claims. Moreover,
Defendants' proposal improperly limits "appended" to mean "tagged." As discussed in Section
IV.B.1, the Court determined in *Amazon* that "appending" also means "adding, affixing or
supplementing," not just "tagging."

### 3. "session identifier"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| a text string that identifies a session | A text string that identifies a session and contains sufficient information to validate that a request is authorized |

This term appears in claims 1, 10, 65, 68, 78, and 79 of the '639 patent. The Court adopted Soverain's proposed construction of this term in *Amazon*, and expressly rejected a construction that would have required the "session identifier" to include authorization information, as Defendants propose here. Ex. A, *Amazon* D.I. 246 at 7-8. As the Court explained, such a construction is "too narrow and improperly import[s] many of the limitations from the specifications and preferred embodiments into the claim language." *Id.* There is no reason for the Court to modify its prior construction of this term.

### 4. "session identifier appended to the service request / appended session identifier"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>Session identifier included with the service request<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | Session identifier tagged to the address/URL of the service request |

This term appears in claim 78 and 79 of the '639 patent. The term has a plain and ordinary meaning that does not require construction. Alternatively, Soverain proposes a construction based on the plain and ordinary meaning if the Court believes it would assist the trier of fact.

Defendants' proposal attempts to add the limitation that service requests must include an "address/URL," and should be rejected for the reasons discussed in Sections IV.B.1 and IV.B.2 above. Likewise, Defendants' proposal improperly limits "appended" to mean "tagged." As discussed in Section IV.B.1, "appending" can also mean "adding, affixing or supplementing."

### 5. "stored session identifier"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal | Defendants' Third Proposal |
|---|---|---|---|
| a stored text string that identifies a session<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system" | A session identifier that is recorded in computer storage without other information, excluding storage in standard browser formats common to the Web on or before June 7, 1995 | A session identifier that is recorded by a special browser without other information.<br><br>The special browser may not implement standard browser formats common to the Web on or before June 7, 1995. | ordinary meaning / no construction necessary |

This term appears in claim 1, 10, 65, and 68 of the '639 patent. Soverain's construction is based on the plain and ordinary meaning, and incorporates the Court's earlier construction of "session identifier" in *Amazon*. *Amazon* D.I. 246, Ex. A at 7.

Defendants First and Second Proposals attempt to read several limitations into the single word "stored," including: (1) the location where the session identifier is stored; (2) whether other information is stored together with the session identifier; and (3) the means and format by which the storing is accomplished. Defendants' overly restrictive constructions should be rejected because they conflict with the bedrock principle that limitations should not be read into the claims, *Phillips*, 415 F.3d at 1323, and also because they have no support in the claim language, specification, or prosecution history. *See id.* at 1324.

Defendants' first limitation requires the session identifier to be "recorded in computer storage." A person of ordinary skill in the art would already know what "stored" means. The

phrase "recorded in computer storage" clarifies nothing and raises the additional question of what "computer storage" may or may not be. For example, is a flash drive "computer storage?"

Second, Defendants attempt to limit the construction of the word "stored" by requiring that the session identifier be stored "without other information." This limitation does not clarify the meaning of the disputed term. Instead, it adds the unsupported requirement that nothing can be stored together with the session identifier. *See SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006). That limitation is inconsistent with the specification, which expressly discloses at least one embodiment in which the client runs a browser and must store the session identifier together with at least the browser program – *i.e.*, "with other information," not "without." Ex. J, '639 patent, col. 7, ll. 22-26; see also Ex. K, '780 patent, claims 58, 111.

Defendants' third limitation, likewise, does not define the word "stored," but instead attempts to restrict the claims to browsers available only after June 7, 1995 – the priority date for the '639 patent application. Defendants' attempt to rewrite the claims in this way should also be rejected. *SRAM*, 465 F.3d at 1359. Defendants cite to a portion of the specification that distinguishes "early browsers" from modern, "cookie compatible browsers." Ex. G at 9 (quoting Ex. J, '639 patent, col. 4, ll. 22-29). Because early web browsers were not capable of storing a "session identifier," the specification explains that one embodiment of the invention requires the client browser to be modified. The specification also explains, however, that the invention may be implemented with cookie compatible browsers without modification. Nothing in the cited part of the specification supports limiting the claims to browsers existing after a certain date. Indeed, the specification emphasizes the flexibility of the disclosed invention.

Defendants also cite the following statement during prosecution:

In addition, Freeman-Benson, at the time of its publication, worked with "all existing WWW browsers." Such browsers as existed at the time would not

20

support Applicants' claimed invention, which as of the priority date, required a modified browser. Of course, "modern" browsers which support cookies are such "modified" browsers. Ex. G at 9.

Contrary to Defendants' contentions, this statement is not a "clear and unmistakable" disclaimer regarding the applicability of the invention to browsers existing prior to a specific date. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1321 (Fed. Cir. 2008). First, the statement refers to browsers that "existed at the time" of the Freeman-Benson publication – *i.e.*, May 1994, and not the June 7, 1995 priority date of the '639 patent application. Second, the statement merely refers to the fact, discussed above, that some early browsers would have to be modified in order to support the invention. But applicants never disclaimed the use of pre-June 7, 1995 browsers, as Defendants' proposed construction suggests.

### 6. "validating the session identifier appended to the service request"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| determining the validity of the appended session identifier<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | Verifying that the appended session identifier received from the client is the session identifier previously returned to that client |

This term appears in claim 78 and 79 of the '639 patent. Soverain's proposal is consistent with the intrinsic record, the plain and ordinary meaning of the term, and the construction of "validating, at the server system, the appended session identifier" adopted by the Court in *Newegg*. *See Newegg* D.I. 214, Ex. C at 4. Defendants' proposal should be rejected because it impermissibly imports limitations and excludes a preferred embodiment disclosed in the specification. *Amgen*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

First, Defendants attempt to construe the "validating" step as limited to confirming whether the session identifier is the one originally sent *from* the server *to* the client. However, claim 78 does not require that the server system generate the session identifier. Indeed, the claim does not include any limitation regarding the origin of the session identifier. Defendants' proposed construction is, therefore, inconsistent with the plain language of the claim.

Second, Defendants' proposal excludes a preferred embodiment in which the "validating" step includes the following checks:

> validation includes the following list of checks: (1) the SID's digital signature is compared against the digital signature computed from the remaining items in the SID and the user IP address using the secret key shared by the authentication and content servers; (2) the domain field of the SID is checked to verify that it is within the domain authorized; and (3) the EXP field of the SID is checked to verify that it is later than the current time. Ex. J, col. 6, ll. 9-16.

All three validation checks disclosed in this embodiment go beyond merely "verifying" that the session identifier is identical to one previously issued by the server. Thus, Defendants' proposal should be rejected for the additional reason that it excludes this preferred embodiment.

## V. CONCLUSION

For the foregoing reasons, Soverain respectfully requests that the Court adopt Soverain's proposed construction for each of the disputed terms and phrases.

Dated: October 8, 2010

Respectfully submitted,

*/s/ Michael C. Smith*
   Michael C. Smith (Texas Bar. No. 18650410)
   michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street
P.O. Box 1556
Marshall, Texas, 75670
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

   Edward J. DeFranco
   eddefranco@quinnemanuel.com
   James M. Glass
   jimglass@quinnemanuel.com
   Anastasia M. Fernands
   anastasiafernands@quinnemanuel.com
   Carlos A. Rodriguez
   carlosrodriguez@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

   David A. Nelson
   davenelson@quinnemanuel.com
   Michael Harte
   mikeharte@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 West Madison, Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for Plaintiff Soverain Software LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 8th day of October, 2010. Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Michael C. Smith*
Michael C. Smith

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 6:07-cv-511-LED |
| | ) |
| CDW CORPORATION, ET AL. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## CLAIM CONSTRUCTION ORDER

Came on to be heard this day the parties' submissions regarding the proper construction

of the claim terms at issue in this case. The Court having been advised that the parties have

agreed on the constructions for the remaining claim terms hereby adopts the parties' agreed

constructions as set out in Appendix A to this order.

So ORDERED and SIGNED this 28th day of May, 2009.



LEONARD DAVIS
UNITED STATES DISTRICT JUDGE

# APPENDIX A

| | U.S. Patent Nos. 5,715,314 and 5,909,492 | |
|---|---|---|
| | **Claim Term, Phrase, or Clause and Patent(s) and Claim(s) in which it appears** | **Court's Construction** |
| 1. | **Message** | **[AGREED]**<br>a unit of information sent electronically |
| 2. | **Shopping cart computer** | **[AGREED]**<br>a computer processing data associated with one or more shopping carts |
| 3. | **Shopping cart database** | **[AGREED]**<br>a database of stored representations of collections of products<br><br>where "database" means a collection of logically related data stored together in one or more computerized files |
| 4. | **Shopping cart message** | **[AGREED]**<br>a message concerning a shopping cart |
| 5. | **Shopping cart** | **[AGREED]**<br>a stored representation of a collection of products |
| 6. | **Plurality of products added to . . . shopping cart / [Add a] plurality of respective products to a shopping cart / [add] . . . plurality of products to . . . shopping cart** | **[AGREED]**<br>product identifiers which are added to an instance of a shopping cart in the shopping cart database / [add] identifiers of respective products to an instance of a shopping cart / [add] identifiers of products to an instance of a shopping cart |

2

| U.S. Patent Nos. 5,715,314 and 5,909,492 | |
|---|---|
| Claim Term, Phrase, or Clause and Patent(s) and Claim(s) in which it appears | Court's Construction |
| 7. **Payment message** | **[AGREED]** a message relating to a payment for one or more products |
| 8. **To cause said[/the/a] payment message to be activated to initiate a payment transaction** | **[AGREED]** to cause an action associated with said[/the/a] payment message to initiate a payment transaction |
| 9. **[A] Shopping Cart URL** | **[AGREED]** a URL concerning a shopping cart |
| 10. **Hypertext link** | **[AGREED]** a non-sequential web association which the user can use to navigate through related topics |
| 11. **A statement URL** | **[AGREED]** a URL concerning a statement |

| | U.S. Patent No. 7,272,639 | |
|---|---|---|
| | **Claim Term, Phrase, or Clause and Patent(s) and Claim(s) in which it appears** | **Court's Construction** |
| 12. | **Service request** | **[AGREED]**<br>a solicitation of services from a client to a server. A service request may entail the exchange of any number of messages between the client and the server. |
| 13. | **Session identifier** | **[AGREED]**<br>a text string that identifies a session |
| 14. | **Session** | **[AGREED]**<br>a series of requests and responses to perform a complete task or set of tasks between a client and a server system |
| 15. | **the stored session identifier** | **[AGREED]**<br>Plain meaning applies; this term does not require construction |
| 16. | **subsequent distinct requests** | **[AGREED]**<br>Plain meaning applies; this term does not require construction |
| 17. | **Validating, at the server system, the appended session identifier / validating the session identifier appended to the service request** | **[AGREED]**<br>at the server system, determining the validity of the appended session identifier |
| 18. | **user identifier** | **[AGREED]**<br>a text string that identifies a user |
| 19. | **A purchase request / a request to purchase** | **[AGREED]**<br>One or more messages requesting a purchase |

| U.S. Patent No. 7,272,639 | |
|---|---|
| **Claim Term, Phrase, or Clause and Patent(s) and Claim(s) in which it appears** | **Court's Construction** |
| 20. **Charging the user . . . according to the user information** | **[AGREED]**<br>charging an account associated with the user according to the user information |
| 21. **Durable Product** | **[AGREED]**<br>physical product |
| 22. **Forwarding . . . from the client to the server system** | **[AGREED]**<br>sending . . . from the client to the server system |
| 23. **Returning** | **[AGREED]**<br>sending back |
| 24. **Fulfilling the purchase request based on the user information** | **[AGREED]**<br>carrying out the purchase request based on the user information |
| 25. **Creating, responsive to the initial service request, the session identifier** | **[AGREED]**<br>producing, in response to the initial service request, the session identifier |
| 26. **Hyperlink** | **[AGREED]**<br>a non-sequential web association which the user can use to navigate through related topics |
| 27. **An identifier of a purchaser** | **[AGREED]**<br>a text string that identifies a purchaser |

| U.S. Patent No. 7,272,639 | | |
|---|---|---|
| | Claim Term, Phrase, or Clause and Patent(s) and Claim(s) in which it appears | Court's Construction |
| 28. | **Initial service request** | **[AGREED]** the first service request in a session |
| 29. | **Controlled document** | **[AGREED]** a document that can be accessed when one or more conditions are met |

# United States Court of Appeals for the Federal Circuit

No. 2011-1009

------------------------------------------------)

SOVERAIN SOFTWARE LLC,
          Plaintiff-Appellee,

     v.

NEWEGG INC.,
          Defendant-Appellant.

------------------------------------------------)

## DECLARATION OF AUTHORITY PURSUANT TO
## 28 U.S.C. § 1746 AND FEDERAL CIRCUIT RULE 47.3(d)

I, Robyn Cocho, being duly sworn according to law and being over the age

of 18, upon my oath depose and say that:

I am an employee of Counsel Press. Counsel Press was retained by

Greenberg Traurig, LLP, Attorneys Movant, Avon Products, Inc. to print the

enclosed documents.

The attached Motion for Leave to File and an *Amicus Curiae* Brief has been

submitted to Counsel Press, by the above attorneys, electronically and/or has been

reprinted to comply with the Court's rules. Because of time constraints and the

distance between counsel of record and Counsel Press, counsel is unavailable to

provide an original signature, in ink, to be bound in one of the documents.

Pursuant to 28 U.S.C. §1746 and Federal Circuit Rule 47.3(d), I have signed the

documents for Michael A. Nicodema, with actual authority on his behalf as an

attorney appearing for the party.

December 14, 2010

Robyn Cocho

## AFFIDAVIT OF SERVICE

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔉𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱
𝔑𝔬. 2011-1009
---------------------------------------------------------)
SOVERAIN SOFTWARE LLC,
                    Plaintiff-Appellee,


        v.


NEWEGG INC.,
                    Defendant-Appellant.
---------------------------------------------------------)

        I, Robyn Cocho, being duly sworn according to law and being over the age of
18, upon my oath depose and say that:

I am retained by Greenberg Traurig, LLP, Attorneys for Novant, Avon Products, Inc.

That on the **14ᵗʰ Day of December 2010**, I served the within **Avon Products, Inc.'s
Motion for Leave to File an *Amicus Curiae* Brief** upon:

<div style="display:flex">

Kent E. Baldaue, Jr., Esq.
David C. Hanson, Esq.
Daniel Harris Brean, Esq.
The Webb Law Firm
700 Koppers Building
436 7ᵗʰ Avenue
Pittsburgh, PA  15219
412-471-8815

Paul J. Ripp, Esq.
Williams Montgomery & John, Ltd.
233 S. Wacker Drive
Suite 6100
Chicago, IL  60606
312-443-3205

</div>

Claudia Wilson Frost, Esq.
Pillsbury Winthrop Shaw
Pittman, LLP
909 Fannin Street, Suite 2200
Houston, TX  77010
713-276-7648

**via Express Mail,** by depositing 2 true copies of each, enclosed in a properly addressed wrapper, in an official depository of the United States Postal Service.

Unless otherwise noted, 5 copies have been Federal Expressed to the Court on the same date as above.

December 14, 2010

# United States Court of Appeals

## *for the*

# Federal Circuit

SOVERAIN SOFTWARE LLC,,

*Plaintiff-Appellee,*

– v. –

NEWEGG INC.,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 07-CV-0511,
JUDGE LEONARD DAVIS

## [PROPOSED ORDER] RE: AVON PRODUCTS, INC.'S MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF

MICHAEL A. NICODEMA
GASTON KROUB
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

*Attorneys for Movant, Avon Products, Inc.*

December 14, 2010



## [PROPOSED] ORDER

Upon consideration of the motion of AVON PRODUCTS, INC., for leave to file an amicus curiae brief, the Court finds that the proposed brief will assist in the determination of this Appeal. Accordingly,

IT IS HEREBY ORDERED that leave to file an *amicus curiae* brief is GRANTED.

FOR THE COURT

Dated: _____          _____

United States Court of Appeals
For the Federal Circuit