# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2011-1009

SOVERAIN SOFTWARE, LLC.,    **RECEIVED**

Plaintiff-Appellee,

JAN 18 2011

v.

United States Court of Appeals
For The Federal Circuit

NEWEGG INC.,

Defendant-Appellant,

---

Appeal from the United States District Court for the Eastern District of
Texas in Case No. 07-CV-0511 , Judge Leonard Davis

---

## AVON PRODUCTS, INC.'s REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

JAN 18 2011

JAN HORBALY
CLERK

Michael A. Nicodema
Gaston Kroub
**GREENBERG TRAURIG, LLP**
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900

*Attorneys for Movant, Avon Products, Inc.*

January 14, 2011



**A.    The District Court Has Issued A Claim Construction Order In Avon's Pending Case Rendering Part II Of Soverain's Opposition Moot**

Now that the District Court has issued its claim construction Opinion in the pending J.C. Penney district court case that Avon is a defendant in, the arguments asserted in Part II of Soverain's Opposition are now moot. A copy of the Court's Opinion is attached as *Exhibit A*. There can be no doubt that this Court has jurisdiction to decide issues of claim construction on patents before it on appeal.

**B.    Soverain's Opposition Ignores The Fact That The NewEgg Appeal Necessarily Involves Claim Construction Issues**

NewEgg's appeal involves questions of infringement and invalidity, and thus involves claim construction. These patents were the subject of a disputed claim construction, and subsequent claim construction Opinion by the District Court in the Amazon case, that NewEgg decided not to challenge below. That NewEgg decided to adopt the District Court's claim construction from the earlier Amazon case does not take claim construction outside the scope of this appeal. Soverain's Opposition fails to address this point, choosing instead to advance inapposite case law that does not take into account the inextricable link under this Court's jurisprudence between liability issues and claim construction. In deciding liability in this case, this Court will necessarily be reviewing the intrinsic records of the patents, particularly as applied by the District Court in its Amazon claim construction Opinion. While the Court is undertaking that analysis, it should

consider the issue of claim construction as fully as possible, including the District Court's latest claim construction Opinion (Exhibit A hereto) and Avon's claim construction arguments as advanced in its Amicus Curaie brief.

## C. Soverain's Opposition Ignores That Avon's Pending District Court Case Involves the Same Issues And Patents As This Appeal

Part III of Soverain's Opposition is based on a faulty premise, namely that there is no connection between the issues raised in the present appeal and the pending litigation in the Eastern District of Texas where Avon is a defendant. Soverain is wrong. First of all, it is undisputed that the present appeal deals with the same patents, same claim terms, and same underlying issues regarding infringement and validity that Avon is currently litigating in the District Court. And there is no dispute that Avon, and its co-defendants, are likely to be bound by any claim constructions reached by this Court as it decides the issues of infringement and invalidity before it in this appeal. Furthermore, this Court's disposition of this appeal will have ramifications for all the issues involved in Avon's pending District Court case. Accordingly, the time for this Court to consider Avon's claim construction positions - and the District Court's latest claim construction Opinion - is in this appeal. This is simply not a case where Avon is seeking an interlocutory review of claim construction in a vacuum - here there is a pending appeal involving the same patents that has gone to final judgment, and Avon is merely seeking to protect itself from losing an opportunity to present its

claim construction arguments to the Court before it potentially becomes bound by a decision by this Court on those issues.

(i)     CONCLUSION

Avon respectfully requests that the Court grant its Motion for Leave to File An *Amicus Curiae* Brief.

Dated: January 14, 2011

Respectfully submitted,

Michael A. Nicodema
Gaston Kroub
**GREENBERG TRAURIG, LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-2100
*Attorneys for Movant, Avon Products, Inc.*

## CERTIFICATE OF SERVICE

Greenberg Traurig, LLP is located in Florham Park, New Jersey. I am over the age of 18 and not a party to this action. Our business address is 200 Park Avenue, Florham Park, New Jersey 07932.

On January 14, 2011, I timely filed 1 original and 3 copies of the following documents, described as:

**MOVANT, AVON PRODUCTS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF AND PROPOSED ORDER**

Via FEDERAL EXPRESS to:

>Clerk
>U.S. Court of Appeals for the Federal Circuit
>717 Madison Place, N.W.
>Washington, D.C. 20439
>Fax (202) 633-9623

On January 14, 2011, I served via US FIRST CLASS MAIL, 2 copies of the foregoing documents, and via facsimile to:

>Kent E. Baldaue, Jr., Esq.
>David C. Hanson, Esq.
>Daniel Harris Brean, Esq.
>The Webb Law Firm
>700 Koppers Building
>436 7th Avenue
>Pittsburgh, PA 15219
>Tele: 412-471-8815
>Fax: 412-471-4094
>
>Claudia Wilson Frost, Esq.
>Pillsbury Winthrop Shaw Pittman, LLP
>909 Fannin St., Suite 2200
>Houston, TX 77010
>Tele: 713-276-7648
>Fax: 713-276-7673
>
>Paul J. Ripp, Esq.

Williams Montgomery & John, Ltd.
233 S. Wacker Drive, Suite 6100
Chicago, IL 60606
Tele: 312-443-3205
Fax: 312-630-8505

I declare under penalties of perjury under the laws of the United States of America and the State of New Jersey that the foregoing is true and correct.

Amy B. Kihm

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

SOVERAIN SOFTWARE LLC,               §
                                     §
        Plaintiff,                   §
                                     §
                                     §   CASE NO. 6:09-CV-274
vs.                                  §   PATENT CASE
                                     §
                                     §
J.C. PENNEY CORPORATION, INC., et al.,§
                                     §
        Defendants.

## MEMORANDUM OPINION

This Memorandum Opinion construes the disputed terms in U.S. Patent Nos. 5,715,314 ("the '314 patent"), 5,909,492 ("the '492 patent"), and 7,272,639 ("the '639 patent").

## BACKGROUND

Two earlier cases before this Court relate to the patents-in-suit. In *Soverain Software LLC v. Amazon.com, Inc.*, 6:04-cv-14 ("*Amazon*"), the Court issued a claim construction order related to the '314 and '492 patents and U.S. Patent No. 5,708,780, which is the parent of the '639 patent. *Amazon* Opinion, Docket No. 246. The Court subsequently affirmed its constructions from *Amazon* in *Soverain Software LLC v. Newegg Inc.*, 6:07-cv-511 ("*Newegg*"), and adopted the parties' agreed constructions for terms in the claims of the '314, '492, and '639 patents. *Newegg* Docket Nos. 192, 214. The parties in the present case have agreed to the construction of "shopping cart" and agreed to adopt the "computer" and "message" constructions from the *Amazon* case. *See* Docket No. 273 at 2-3. During the *Markman* hearing, Defendants

agreed to Soverain's proposed construction of "collection" as "zero, one or more." *See* Docket No. 290.

## U.S. Patent Nos. 5,715,314 and 5,909,492

The '492 patent is a continuation of the '314 patent, and the patents share a common specification. The '314 and '492 patents were subject to reexaminations, and the Patent Office issued Reexamination Certificates in 2007 affirming all the original claims and adding additional claims. The patents generally relate to performing electronic commerce transactions over the Internet. As shown in Figure 1 of the '314 patent, a buyer's computer is connected to a network, such as the Internet, for connection to a merchant's computer and a payment computer. '314 patent at 4:35-45; Figure 1. A shopping cart database is coupled to the payment computer. *Id.* A user reviews advertisements on a merchant computer and eventually requests a product. *Id.* at 5:26-30. This results in a payment URL being sent from the buyer to the payment computer. *Id.* Rather than purchasing immediately, the buyer computer may request that the product be added to a shopping cart. *Id.* at 7:55-60. The payment computer may validate that the buyer is authorized (*i.e.* has approved credit) to purchase the product. The payment computer responds to the buyer computer with a message that gets redirected from the buyer computer to the merchant computer. In this manner, the merchant computer does not have to directly communicate with the payment computer. *Id.* at 1:50-2:18.

## U.S. Patent No. 7,272,639

The '639 patent is a continuation of the '780 patent. The parties dispute whether the '639 patent's priority claim to the '780 parent patent is proper because the specification was changed between the two patents. *Compare* '639 patent at 6:5-17, *with* '780 patent at 4:24-31.

2

Generally, the '639 patent relates to Internet communications between a client computer and a server computer. The patent describes general Internet communications as being an open structure in which the server computer may not be able to identify each client requesting information or services, thus posing various security problems. *See* '639 patent at 2:40-3:2. The patent describes a method of verifying a user's access rights and recognizing a series of service requests as coming from the same client. *Id.* at Abstract. In the disclosed techniques, a client request to a server may be routed to an authentication server, which issues a session identification (SID) to a qualified client. *Id.* at 3:20-30. The client server thereafter appends the SID to requests made to the server, thus allowing the client server to access controlled files during subsequent requests. *Id.* at 3:30-53.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the

3

context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification

4

will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d

1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560,

1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another

tool to supply the proper context for claim construction because a patent applicant may also

define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d

1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a

term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record

in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317

(quoting *C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court

understand the underlying technology and the manner in which one skilled in the art might use

claim terms, but technical dictionaries and treatises may provide definitions that are too broad or

may not be indicative of how the term is used in the patent.  *Id.* at 1318.  Similarly, expert

testimony may aid a court in understanding the underlying technology and determining the

particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported

assertions as to a term's definition is entirely unhelpful to a court.  *Id.*  Generally, extrinsic

evidence is "less reliable than the patent and its prosecution history in determining how to read

claim terms." *Id.*

## CLAIM TERMS

### buyer computer for operation by a user

The term "buyer computer for operation by a user" appears in claims 34 and 39 of the

'314 patent and claims 17, 18, 35, and 36 of the '492 patent.  Soverain contends the term does

not require construction and should be given its plain and ordinary meaning; alternatively, Soverain proposes "a computer for operation by a user desiring to buy products." Defendants construe the term as "a physical personal computer for home-use to be used by a user-buyer."

Defendants base their construction on charts prepared by the Examiner during reexamination. In particular, Defendants point to the Examiner's statement that the term "has a reasonable intent of a physical person computer for home-use to be used by a user buyer." '314 Prosecution History, Nov. 15, 2006 Office Action at 10 and12; '492 Prosecution History, Nov. 15, 2006 Office Action at 15, 18, 20 and 22. Defendants assert that statements made by the Examiner for the basis of confirmation of the claims are instructive to the proper construction of the terms. Defendants also argue that Soverain's construction is too broad in light of the prosecution history.

Soverain argues that the Examiner's charts cannot dictate the construction of the claim terms and assert that Defendants have provided no authority for such proposition. Soverain asserts that case law contrasts Defendants' positions and the Examiner's remarks do not limit the plain meaning of the claims.

During reexamination, all claims in both patents were affirmed without amendment, and new claims were granted. *See generally id.* Contrary to Defendants' contentions, the Examiner's unilateral statements during reexamination are not a clear disavowal of claim scope by Soverain. *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347-48 (Fed. Cir. 2005). However, the Examiner's statements should not be ignored as they may relate to how one skilled in the art understands the invention. *Id.* The Examiner's charts serve to identify parts of the specification that relate to various claim elements; however, the Examiner's charts do not reflect that the

Examiner conducted a construction analysis based on an assessment of the intrinsic evidence. Even with the existence of such charts, the Court must still apply the standard claim construction rules.

Defendants' constructions, which incorporate the Examiner's statements and citations to the specification, are contrary to the fundamental principles of claim construction. *Phillips*, 415 F.3d at 1312-13 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"). Likewise, Defendants' argument that Soverain is precluded from a broader claim construction because it did not dispute the Examiner's remarks also fails. *Salazar*, 414 F.3d at 1347 ("This court refuses to create a rule or presumption that the applicant in this case disavowed claim scope by silence."). The portions of the specification cited by the Examiner state "a buyer computer 12 operated by a user desiring to buy a product" and point to Figure 1, which includes a box labeled "buyer computer." '314 patent at 4:36-37, Fig. 1. Moreover, the specification cites do not include the "physical personal computer" and "home use" language used in the Examiner's characterization and sought by Defendants. The term "buyer computer for operation by a user" does not require construction and will be given its plain and ordinary meaning.

**client computer for operation by a client user**

The term "client computer for operation by a client user" appears in claims 15 and 16 of the '492 patent. Soverain contends the term does not require construction and should be given its plain and ordinary meaning; alternatively, Soverain proposes "a computer capable of requesting a service of another computer or computer system." Defendants propose a "buyer computer operated by a user."

Soverain asserts that "client" has a well-known meaning to a person of ordinary skill in the art. Soverain argues that Defendants are improperly construing "client" and "buyer" to be the same and that the two different words that have two different meanings. In support, Soverain points out that the '492 patent does not use the terms interchangeably and that one skilled in the art would understand the two words to have distinct meanings.

Defendants assert that the '492 patent consistently references the "client computer" as a "buyer computer" and no other types of "clients" are disclosed. In support, Defendants argue that all the figures in the '492 and '314 patents only refer to a "buyer computer." Further, the specification describes how the server computer transmits a statement document that includes purchase transaction records to the "client computer," and that same transmission is later described as being sent between the "payment computer" and the "buyer computer." '492 patent at 3:28-30; 8:55-59. Defendants also argue Soverain used the terms interchangeably in prosecuting the '492 patent. *See* '492 Prosecution History, October 13, 1998 Amend. at 18.

Defendants do not dispute that Soverain's construction is consistent with a standard meaning of the term "client." Defendants' argument is based upon an assertion that the only client computer disclosed is a buyer computer, and Defendants improperly seek a limitation equating client and buyer. The term "client computer for operation by a client user" does not require construction and will be given its plain and ordinary meaning.

**network-based sales system**

The term "network-based sales system" appears in the preamble of claims 34-36, 50, and 84 of the '314 patent and claims 17 and 35 of the '492 patent. Soverain contends that because the

8

term is found only in the preambles it is not limiting and does not require construction. Defendants propose "a system that includes at least one buyer computer for operation by a user desiring to buy a product, at least one merchant computer, and at least one payment computer. The buyer computer, the merchant computer, and the payment computer are interconnected by a computer network."

Soverain asserts that the preambles do not breathe life into the claims—they merely state "[a] network-based sales system, comprising"—and that the following claim limitations define the claims. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Soverain contends Defendants' proposal is contrary to the doctrine of claim differentiation; for example, the term "merchant computer" is not in independent claim 34 of the '314 patent but is added in dependent claim 85. Soverain also contends Defendants' improper importations are internally inconsistent: claim 19 of the '492 patent requires a "payment computer" but claims 17 and 35 do not.   Also, as previously described, Soverain argues that the reliance on the reexamination Examiner's chart is flawed.

Defendants again base their construction verbatim on the Examiner's chart that quotes the Abstract. *See* '314 Prosecution History, Nov. 15, 2006 Office Action at 9. Defendants assert that a "network-based sales system" includes 1) a buyer computer, 2) a merchant computer, and 3) a payment/shopping cart computer.  In support, Defendants reference the Court's overview of the patents in the *Newegg* summary judgment ruling in which the Court stated that the patents were "directed to a network-based sales system including at least one buyer computer, at least one merchant computer, and at least one payment computer." *Newegg* Order, Docket No. 434 at 2.

9

Defendants also argue that the only entity described in the specification as offering goods for sale is a merchant and, without including such a term in the preamble, the claims do not fully set forth the invention.

Reliance on the Examiner's statement would require reading in a portion of the Abstract regardless of whether those features are recited in the claims or not. In addition to improperly importing limitations, Defendants' proposed construction is redundant and inconsistent. The term "network-based sales system" is not "necessary to give life, meaning, and vitality," *Pitney Bowes*, 182 F.3d at 1305; therefore, it does not require construction.

**payment computer**

The term "payment computer" appears in claim 40 of the '492 patent. Soverain proposes "a computer processing payment information," while Defendants propose "shopping cart computer."

Soverain relies on the Court's construction from *Amazon* where the Court used an ordinary meaning of "payment" and rejected reading in limitations from the specification seeking to add details to "accept and verify payment by the buyer and authorize purchase of products from the merchant." *Amazon* Docket No. 246 at 16-17. Additionally, Soverain asserts Defendants' construction violates the doctrine of claim differentiation because reexamination claim 89 of the '314 patent states "wherein the payment computer is the shopping cart computer." As to the Examiner's chart, Soverain again notes that the chart merely shows a preferred embodiment, nothing in the specification limits payment computer to the shopping cart computer, and no prior art required such a distinction.

Defendants argue the Court did not have the benefit of the Examiner's reexamination statements, which were issued after the *Amazon* Order. Defendants again seek to utilize the Examiner's statements and additionally argue that the specification consistently treats the shopping cart computer as the same device as the payment computer. '492 patent at 5:11-15.

The claim language does not support Defendants' construction—claim 40 depends from claim 15, and claim 15 calls out "one or more servers" while claim 40 then states "at least one of the server computers is a payment computer." The citation provided by Defendants also states that the payment computer has two functions: access to the settlement database and access to the shopping cart. '492 patent at 5:5-11. Defendants' construction would improperly limit the "payment computer" to one of those functions. Moreover, there are other portions of the specification that describe other details of a payment computer in addition to that of the shopping cart. *See e.g.* '492 patent at 5:56-6:9, 6:15-7:54, 8:33-9:2. There is no reason to depart from the Court's previous construction in *Amazon*, which is primarily based on plain and ordinary meaning, and the Court construes "payment computer" as "a computer processing payment information."

**payment message**

The term "payment message" appears in claims 34, 35, 39, 109, and 134 of the '314 patent and claims 17, 18, 35, and 36 of the '492 patent. Soverain proposes "a message relating to a payment for one or more products." Amway and QVC propose "a message enabling payment for one or more products," while the remaining Defendants propose "a message relating to payment for one or more products, without the merchant computer having to communicate directly with the payment computer."

11

Soverain adopts the *Amazon* construction and asserts that Defendants' proposal imports a limitation regarding one specific embodiment. *Amazon* Opinion, Docket No. 246 at 15. While Soverain acknowledges the specification states that "the invention provides . . . orders from the buyer computer without the merchant computer having to communicate directly with the payment computer," '314 patent at 2:3-11, it asserts that this passage is in the Summary and begins "in one aspect," *id.* at 1:50, and is followed by five other passages that state "In another aspect, . . . ." *Id.* at 2:20; 2:34; 2:66; 3:19; 3:38. Soverain asserts there is no clear disavowal of claim scope. Addressing Amway and QVC's construction, Soverain asserts that the claims in question do not require the payment transaction to be completed or enabled and asserts that "enable" is not contained in the specification.

Defendants contend the specification's statement that "the orders from the buyer computer without the merchant computer having to communicate directly with the payment computer" is a disavowal of claim scope. *See id.* at 2:3-11. Defendants assert the specification only describes a payment message provided between the payment computer and the buyer computer. *Id.* at 1:55-59, 2:32-36.

Amway and QVC assert that "relating to" was not specifically addressed in *Amazon* and does not provide guidance to the jury. Amway and QVC contend that the payment message is the catalyst for initiating a payment transaction and claims 34 and 39 state the "payment message" is capable of "initiat[ing] a payment transaction." They further argue that the specification describes the payment message in the context of consummating a transaction. *Id.* at 5:57-8:32; Figs. 2-3. Amway and QVC assert that Soverain cites no intrinsic evidence but merely relies on *Amazon*, a

case in which "relating to" was not an issue. Finally, Amway and QVC contend that "relating to" would encompass every conceivable message that might touch on payment for a product and expands the term so broadly as to make it meaningless.

Soverain's arguments and citations effectively counter Defendants' position that a clear disavowal was created. Defendants' construction improperly imports a limitation from a specific embodiment provided in the specification, and the previous construction in *Amazon* using "relating to payment" does not need to be redefined as "enabling payment." There is no reason to depart from the Court's previous construction, and the Court construes "payment message" as "a message relating to a payment for one or more products."

**plurality**

The term "plurality" appears in claims 34, 36, 39, 84, and 144 of the '314 patent and claims 17, 18, 35, and 36 of the '492 patent. Soverain argues the term does not require construction and should be given its plain and ordinary meaning, and Defendants propose "two or more."

Soverain asserts that "plurality" has a plain meaning and that a construction would mislead the jury to construe the term separately since "plurality of respective products" is also being construed.

Defendants assert that numerous Federal Circuit cases have construed the term as "two or more." Defendants also assert that as used in the claims it is clear "plurality" is referring to "two or more" requests, products, or messages. Based on its plain and ordinary meaning, the Court construes "plurality" as "two or more."

13

**plurality of respective products/plurality of products**

The terms "plurality of respective products" and "plurality of products" appear in claims 34, 36, and 39 of the '314 patent and claims 17, 18, 35, and 36 of the '492 patent. Soverain proposes "product identifiers which are added to an instance of a shopping cart in the shopping cart database" and "identifiers of respective products to an instance of a shopping cart." Defendants propose "two or more products, identified by two or more respective product identifiers."

While the *Amazon* Opinion did not construe this term, Soverain asserts that its construction is most consistent with the opinion because it incorporates the constructions for the terms "plurality of products added" and "[add a] plurality of respective products to a shopping cart." *Amazon* Opinion, Docket No. 246 at 20. Soverain argues Defendants' construction is improperly limiting and conflicts with the *Newegg* JMOL Order, which addressed the damages expert's inclusion of single-sale items in his reasonable royalty analysis. *Newegg* Order, Docket No. 434 at 17-18. Additionally, Soverain argues the system claims expressly recite "programmed to receive," which only requires capability of handling transactions involving one or more products; therefore, the method claims should be understood and construed the same.

In support of their construction, Defendants reference claim 39 of the '314 patent to establish that the claim calls for a plurality of requests, products, and messages. Defendants also assert that the specification teaches that a product identifier represents the product the user wishes to buy. '314 patent at 5:29-44. Defendants argue Soverain's reliance on the *Newegg* Order is

misplaced because the opinion only addressed whether single item sales should be included in damages calculations.

Indeed, Soverain relies on the portion of the *Newegg* JMOL Order that addressed Soverain's damages expert's inclusion of single-item sales in his reasonable royalty analysis. Newegg argued this was improper because its single-item sales did not infringe. In its evaluation, the Court referenced its infringement analysis, stating that "to infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim." *Newegg* Order, Docket No. 434 at 17-18 (citing *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378 (E.D. Tex. 2009)). Thus, based on the expert's consideration of the capability of infringement in his analysis of reasonable royalty, the Court found the expert's inclusion of single-item sales to be proper. *Id.*

The apparatus claims, such as '314 patent claim 34, have language such as "being programmed to receive a plurality." This language falls into the "capability" analysis as noted in the *Newegg* Order. In contrast, the method claim 39 recites "receiving . . . a plurality of shopping cart messages sent . . . in response to receipt of a plurality of requests from a user to add a plurality of respective products." This language does not have the "capability" language of the apparatus claims; rather, a recitation of the positive occurrence of the method steps. The specification makes clear that a product identifier is put in the cart; however, Soverain has not pointed to anything in the intrinsic record that indicates that the claims mean only a single product when the claim

language calls for a "plurality of products." The Court construes "plurality of respective products" and "plurality of products" as "two or more products, identified by two or more respective product identifiers."

**shopping cart computer**

The term "shopping cart computer" appears in claims 34, 35, 39, 84, 109, 134, and 144 of the '314 patent and claims 17, 18, 35, and 36 of the '492 patent. Soverain proposes "a computer processing data associated with one or more shopping carts." Amway and QVC propose "a computer that modifies the shopping carts in the shopping cart database," while the remaining Defendants propose "a computer that modifies the shopping carts in the shopping cart database, operated by the manager of a network sales system."

Soverain's construction matches the agreed constructions in *Amazon* and *Newegg*. *Amazon* Opinion, Docket No. 246 at 28; *Newegg* Opinion Docket No. 214 at 2. Soverain objects to Defendants' construction that adds "operated by the manager of a network sales system" because the asserted claims do not include "a manager" and it lacks intrinsic support. Soverain also argues the claims already define the term and Defendants' construction add needless limitations. *See e.g.* '314 patent at 13:62-14:29 (claim 34 provides "said shopping cart computer being a computer that modifies said stored representations of collections of products. . . ").

Defendants assert that the limitation in claim 34 was added to overcome an indefiniteness rejection; therefore, should be included in the construction. *See* '314 Prosecution History, Sep. 19, 1996 Office Action at 2, Dec. 19, 1996 Amend. at 1-4. Defendants further assert that the specification makes clear that the claimed invention intended to address payment security issues

with systems that allowed direct communication between a merchant computer and a shopping cart. '314 patent at 1:25-35. Defendants assert that this problem was addressed by separating the merchant computer and shopping cart computer. *Id.* at 1:56-65, 2:4-11, 2:13-18, 3:59-4:63, 5:26-37, 7:14-27, 7:65-82.

Amway and QVC assert that their construction clarifies for the jury the meaning of the language that was added by the Amendment. In particular, the added claim language "stored representations of collections of products" corresponds to shopping carts; therefore, Amway and QVC assert that their construction clarifies the scope of the invention. Amway and QVC contend that Soverain's construction is so broad that it returns the claim scope to the indefinite state that the Amendment specifically was meant to address.

The claim language itself includes defining language added in the Amendment. Importing this limitation is redundant and a clarifying construction is unnecessary; however, this does not nullify the Amendment requirement of the claims that "said shopping cart computer being a computer that modifies said stored representations of collections of products in said database." The previous construction in *Amazon* does not need to be redefined to add clarity, and there is no reason to depart from the Court's previous construction. The Court construes the term "shopping cart computer" as "a computer processing data associated with one or more shopping carts."

**shopping cart message**

The term "shopping cart message" appears in claims 34, 39, 84, and 144 of the '314 patent and claims 17, 18, 35, and 36 of the '492 patent. Soverain proposes "a message concerning a shopping cart," and Amway proposes "a message containing an authenticator based on a

17

cryptographic key, whose authentication indicates that the user has authority to modify a shopping cart."

Soverain's construction matches the ruling in *Amazon*. *Amazon* Opinion, Docket No. 246 at 14. Soverain asserts that Amway's construction seeks to incorporate "cryptographic key," a position explicitly rejected in *Amazon*. Soverain notes the prior Opinion found that various claims included an explicit recitation of a "cryptographic key" and various claims do not, thus contradicting the inclusion in the term "shopping cart message." *Id.* at 15-16. Soverain asserts this is consistent with *Phillips*, which issued after the *Amazon* Opinion, because the Court looked to the claims themselves and was wary of reading in limitations from the specification. *See Phillips*, 415 F.3d at 1312.

Amway asserts that the focus should be on reading the term in light of the specification pursuant to *Phillips* and that the shopping cart messages of the specification all include cryptographic keys. '314 patent at 2:3-11, 7:59-8:2. Amway also points to the Examiner's chart that cited the cryptographic key. '341 Prosecution History, Nov. 15, 2006 Office Action at 11.

There is no clear disavowal of claim scope in the intrinsic record, and Amway's construction improperly imports limitations from the specification. As noted in the *Amazon* Order, some claims include a recitation of a key, and some do not. The Court construes "shopping cart message" as "a message concerning a shopping cart."

18

**universal resource locator**

The term "universal resource locator" appears in claims 17 and 18 of the '492 patent. Soverain proposes "the global address of documents and other resources on the Worldwide Web, also known as URL," and Defendants propose "an address for a resource on the Internet."

The parties dispute whether a URL should be limited to an address for Worldwide Web resources or construed broader to include addresses for any Internet resource. Soverain asserts that as used throughout the specification URLs are described in the context of the Worldwide Web as all URLs in the intrinsic record begin with "http://" which designates Web resources. '314 patent at 9:51-63, Figs. 5-11. Defendants cite to standard dictionary definitions of URL, which include other non-Web protocols, such as FTP, that are accessed through the Internet.

Defendants are correct that "URL" generally is not limited to Web protocols and is also utilized in other Internet uses, such as FTP protocol, and there is no clear disavowal in the intrinsic record of the general meaning of the term URL. The Court construes "universal resource locator" as "an address for a resource on the Internet."

**The '639 Patent Disputed Terms**

**appending the stored session identifier to each of the subsequent distinct requests**

The term "appending the stored session identifier to each of the subsequent distinct requests" appears in claim 1 of the '639 patent. Soverain proposes "tagging, adding, affixing or supplementing the stored session identifier to each of the subsequent distinct requests," and

Defendants propose "tagging the stored session identifier to the address/URL of each of the subsequent distinct requests."

Soverain points to the *Amazon* construction of a similar term ("appending . . . [the session identifier] . . . as part of a . . . path name in a uniform resource locator") to mean "tagging, adding, affixing, or supplementing [the session identifier] to the URL as part of a path name." *Amazon* Order, Docket No. 246 at 6. Soverain argues that for consistency with the prior construction the "tagging, adding, affixing, or supplementing" language should be used. Soverain asserts that Defendants' construction conflicts with the doctrine of claim differentiation as dependant claims 35, 36, and 38 respectively call out that the session identifier SID is appended to a path name, the path name is part of a link, and "the link comprises a uniform resource locator." Additionally, Soverain asserts that one skilled in the art would know that information in a request to a server may be sent by means other than appending it to the URL.

Defendants assert that every disclosure of appending an SID in the specification discloses only appending an SID to a URL: "a modified URL appended with an SID," "an SID . . . is appended ("tagged") 230 to the original URL," "the modified URL," "the tagged URL." '639 patent at 5:53-54, 7:14-16, 7:18-20, 8:4-7. Defendants assert that the parent patent, U.S. Patent No. 4,708,780, specifically taught away from using any other embodiment. '780 patent at 4:24-31. In rebutting Soverain's claim differentiation arguments, Defendants asserts that claims 35, 36, and 38 all relate to an SID appended to "at least one path name in a document returned by the server system," which is not repeated in Defendants' construction, thus it does not render the dependent claims redundant. Defendants further argue the continuation application, which led to the '639

20

patent, modified the specification in an effort to expand the disclosure to cover other embodiments. '639 patent at 4:25-28 (changed "is" to "was"), 4:28-29 (adding "However, it may now be implemented in cookie compatible browsers.").

Soverain asserts that the original specification described browsers that could be used to implement the embodiment using a stored session identifier and the amendments made to the continuation application did not expand on this. However, Soverain argues the added sentence acknowledged that the special browsers had become common place with regard to browsers that support "cookies."

The claim differentiation doctrine is not controlling, as the dependent claims 35, 36, and 38 require more than just appending the SID to a URL. Likewise, the parties' dispute over the changed paragraph is inconsequential. As originally presented, the paragraph merely states that there is an "alternative embodiment" that requires a special browser that was generally not common in "early browser formats." This does not mean that the alternative embodiment cannot be used or that the claims are themselves limited to "early browser formats." At best, the modification teaches that alternative embodiments do exist—however inconvenient.

Although one technique is disclosed in the specification, there is no clear disavowal that limits the claim to the one disclosed embodiment of appending to the address/URL. Nor have Defendants pointed to strong language to deviate from the prior *Amazon* ruling utilizing "tagging, adding, affixing, or supplementing." The Court construes the term "appending the stored session identifier to each of the subsequent distinct requests" as "tagging, adding, affixing or supplementing the stored session identifier to each of the subsequent distinct requests."

21

**"a service request to which a session identifier stored at the client has been appended by the client" / "session identifier appended to the service request / appended session identifier"**

The terms appear in claims 78 and 79 of the '639 patent. Soverain contends the terms do not require construction and should be given their plain and ordinary meaning; alternatively, it proposes "a service request with which the client includes a session identifier stored at the client" and "session identifier included with the service request," respectively. Defendants propose "a service request that includes an address/URL to which a session identifier stored at the client has been tagged by the client" and "session identifier tagged to the address/URL of the service request."

Both parties generally cite to the arguments stated above regarding "appending the stored session identifier to each of the subsequent distinct requests." Defendants additionally assert that Soverain's constructions are conflicting and would be confusing to the jury. Consistent with the *Amazon* ruling utilizing "tagging, adding, affixing, or supplementing," the Court construes "a service request to which a session identifier stored at the client has been appended by the client" as "a service request with which the client tags, adds, affixes or supplements a session identifier stored at the client" and construes "session identifier appended to the service request / appended session identifier" as "session identifier tagging, adding, affixing or supplementing with the service request."

**session identifier**

The term "session identifier" appears in claims 1, 10, 78, and 79 of the '639 patent. Soverain proposes "a text string that identifies a session," and Defendants propose "a text string

that identifies a session and contains sufficient information to validate that a request is authorized."

Soverain requests that the Court adopt the same construction that was found in the *Amazon* case with regard to the parent '780 patent. Defendants assert that the 2002 '639 patent's prosecution disclaimer warrants a different construction.

Defendants assert that the session identifier must contain all information needed for validation in a single step, whereby the method does not perform a second step of retrieving validation information in the server. Defendants argue that to distinguish a prior art reference (Johnson) during the '639 patent's prosecution, the Applicants stated that "the session identifier itself contains sufficient information to validate that a request is authorized" and that Applicants distinguished the Johnson as having a "credentials identifier" that is provided to the client. *See* '639 Prosecution History, Dec. 28, 2001 Amendment at 8. Defendants argue the credential identifier does not itself validate a request, rather, the credential identifier is a "small value" sent by the client that is used to retrieve a credential record stored on the server. The credential record is then used to validate a record request. *See id.* at 6. Defendants also point to the Applicants' conclusion, which stated "Applicants' invention, on the other hand, does not need to perform this reconstruction, because the session identifier itself contains sufficient information to validate that the request is authorized." *See id.* at 8. Defendants argue this is a clear disavowal of a broad interpretation of session identifier.

Soverain responds that the prosecution statement is inapplicable to the asserted claims. Soverain asserts that some claims require determining whether a request is authorized, *see e.g.*

23

'639 patent at claim 22, but the asserted claims do not. Soverain asserts that the SIDs of the '639 patent may include different types of information, such as user identifier, current domain, key identifier, expiration time, IP address, and digital signature. *Id.* at 3:16-18, 8:1-4. Soverain argues the asserted claims are not directed at authorization and even claim 78 merely requires "validating" the SID.

The rejection of issue was over a combination including Johnson that specifically was used in a rejection of claim 1 (application claim 3). *See* '639 Prosecution History, Dec. 28, 2001 Amend. at 6. The Applicants specifically stated that "Applicants respectfully assert that neither Freeman-Benson's specialized URL nor Johnson's credentials identifier is equivalent to a session identifier as recited in Applicants' Claim 3." *Id.* at 7. The Amendment then distinguishes Johnson on the ground that a session identifier "does not need to perform this reconstruction, because the session identifier itself contains sufficient information to validate that the request is authorized." *Id.* at 8. Thus the Amendment statements are relevant to the claim construction scope. The Court construes "session identifier" as "a text string that identifies a session and contains sufficient information to validate that a request is authorized."

**stored session identifier**

The term "stored session identifier" appears in claim 1, 10, 65, and 68 of the '639 patent. Soverain proposes "a stored text string that identifies a session," and Avon proposes "a session identifier that is recorded by a browser without other information." The Court has defined "session identifier" and further construction of "stored session identifier" is unnecessary.

24

**validating the session identifier appended to the service request**

The term "validating the session identifier appended to the service request" appears in claim 78 of the '639 patent. Soverain proposes "determining the validity of the appended session identifier," and Defendants propose "verifying that the appended session identifier received from the client is the session identifier previously returned to that client."

Soverain asserts that its construction matches the agreed construction in the *Newegg* case and that Defendants' construction improperly limits the term by requiring verification that the session identifier ("SID") is the one originally sent from the server to the client. Soverain asserts that claim 78 does not include any limitations regarding the origin of the SID and that requirement ("in the server system . . . ") only appears in dependent claim 79. Soverain also points to other disclosed embodiments Defendants' construction excludes. *Id.* at 6:9-16 (stating that validating an SID involves details regarding comparing digital signatures, checking the domain field of the SID, and checking whether the SID has time expired).

Defendants argue Soverain's construction merely repeats "validating" without providing any guidance as to how to interpret the word. Defendants assert the server creates SIDs but also acknowledges that the validity check described in the specification goes beyond merely verifying that the SID is identical to the one previously issued. These additional checks, however, do not negate that the checks involve verifying that the SID received is the SID previously sent to the client.

The specification provides a verification block and details what validation is required, *see id.* at Figure 2A , 6:9-16, which departs from Defendants' construction that improperly limits their

25

construction to one embodiment. The Court construes "validating the session identifier appended to the service request" as "determining the validity of the appended session identifier."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's interpretations of the claims are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 13th day of January, 2011.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

| U.S. Patent Nos. 5,715,314 and/or 5,909,492 | |
|---|---|
| **DISPUTED CLAIM TERMS** | **COURT'S CONSTRUCTION** |
| **buyer computer for operation by a user**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | plain and ordinary meaning/no construction necessary |
| **client computer for operation by a client user**<br><br>'492 patent (claims 15, 16, 39, 40, 66, 68, 73, 74, 92, 95, 96 and 101) | plain and ordinary meaning/no construction necessary |
| **collection**<br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | zero, one or more |
| **computer**<br><br>'314 patent (claims 34-39)<br><br>'492 patent (claims 1, 3-5, 15-18, 35, and 36) | a functional unit that can perform substantial computation, including numerous arithmetic operations, or logic operations without human intervention |

| U.S. Patent Nos. 5,715,314 and/or 5,909,492 | |
|---|---|
| **DISPUTED CLAIM TERMS** | **COURT'S CONSTRUCTION** |
| **message**<br><br>'314 patent (claims 34, 35, and 39)<br><br>'492 patent (claims 1-5, 17, 18, 35, and 36) | a unit of information sent electronically |
| **network-based sales system**<br>'314 patent (claims 34-36, 50, and 84)<br><br>'492 patent (claims 17 and 35) | no construction necessary |
| **payment computer**<br><br>'492 patent (claim 40) | a computer processing payment information |
| **payment message**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | a message relating to a payment for one or more products |

| U.S. Patent Nos. 5,715,314 and/or 5,909,492 | |
|---|---|
| DISPUTED CLAIM TERMS | COURT'S CONSTRUCTION |
| **plurality**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | two or more |
| **plurality of respective products/ plurality of products**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | two or more products, identified by two or more respective product identifiers |
| **shopping cart computer**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | a computer processing data associated with one or more shopping carts |

| U.S. Patent Nos. 5,715,314 and/or 5,909,492 | |
|---|---|
| **Disputed Claim Terms** | **Court's Construction** |
| **shopping cart message**<br><br>'314 patent (claims 34-36, 39, 50, 51, 84, 109, 110, 111 and 144)<br><br>'492 patent (claims 17, 18, 35, and 36) | a message concerning a shopping cart |
| **universal resource locator**<br><br>'492 patent (claims 17 and 18) | an address for a resource on the Internet |

| U.S. Patent No. 7,272,639 | |
|---|---|
| **Disputed Claim Terms** | **Court's Construction** |
| **appending the stored session identifier to each of the subsequent distinct requests**<br><br>'639 patent (claim 1) | tagging, adding, affixing or supplementing the stored session identifier to each of the subsequent distinct requests |

| U.S. Patent No. 7,272,639 | |
|---|---|
| **DISPUTED CLAIM TERMS** | **COURT'S CONSTRUCTION** |
| **"a service request to which a session identifier stored at the client has been appended by the client"** | a service request with which the client tags, adds, affixes or supplements a session identifier stored at the client |
| **"session identifier appended to the service request / appended session identifier"**<br><br><br>'639 patent (claims 78 and 79 ) | session identifier tagging, adding, affixing or supplementing with the service request |
| **session identifier**<br><br>'639 patent (claims 1, 10, 78 and 79) | a text string that identifies a session and contains sufficient information to validate that a request is authorized |
| **validating the session identifier appended to the service request**<br><br>'639 patent (claim 78) | determining the validity of the appended session identifier |

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Soverain Software, LLC _____ v. Newegg, Inc. _____

No. 2011-1009 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Amicus Curaiae, Avon Products, Inc. certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.     The full name of every party or amicus represented by me is:

Avon Products, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

None.

3.     All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

None.

4. ☐  The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

(Greenberg Traurig, LLP - Michael A. Nicodema, Gaston Kroub)

1/14/11
_____
Date

_Michael Nicode_
Signature of counsel

_Michael Nicodema_
Printed name of counsel

Please Note: All questions must be answered
cc: Ken Baldau, Claudia Wilson, Paul Ripp

---