2011-1009

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

SOVERAIN SOFTWARE LLC,

Plaintiff-Appellee,

v.

NEWEGG INC.,

Defendant-Appellant.

---

Appeal from the United States District Court for the Eastern District of Texas
in Case No. 07-CV-0511, Judge Leonard Davis.

---

## SOVERAIN'S CORRECTED SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S JUNE 13, 2013 ORDER

---

DAVID NELSON
ROBERT B. WILSON
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY  10010
(212) 849-7000

DANIEL H. BROMBERG
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
(650) 801-5000

SETH P. WAXMAN
THOMAS SAUNDERS
MEGAN BARBERO
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000

ROBERT GREENE STERNE
JON E. WRIGHT
SALVADOR M. BEZOS
STERNE, KESSLER, GOLDSTEIN
  &amp; FOX
1100 New York Ave., NW
Washington, DC  20005
(202) 371-2600

June 28, 2013

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Soverain Software LLC certifies the

following:

1.    The full name of every party or amicus represented by me is:

    Soverain Software LLC

2.    The name of the real party in interest represented by me is:

    Same as above

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    QUINN EMANUEL URQUHART & SULLIVAN, LLP:  David Nelson, Robert B. Wilson, Daniel H. Bromberg, and Neil Cave

    WILLIAMS MONTGOMERY & JOHN LTD.:  Paul J. Ripp

    JONES DAY:  Kenneth R. Adamo, Thomas Demitrack, Thomas L. Giannetti, Mark C. Howland, George T. Manning, Barry R. Satine, Jennifer Seraphine, Ognian V. Shentov, Andrey Belenky, Kenneth Canfield, Clark Craddock, Lynda Q. Nguyen, Debra R. Smith, and Stela C. Tipi

    THE ROTH LAW FIRM:  Carl R. Roth, Amanda Aline Abraham, and Brendan Clay Roth

    SIEBMAN BURG PHILLIPS & SMITH, LLP:  Michael C. Smith

    WILMER CUTLER PICKERING HALE AND DORR LLP:  Seth P. Waxman, Thomas Saunders, and Megan Barbero

STERNE, KESSLER, GOLDSTEIN & FOX:  Robert Greene Sterne,
Jon E. Wright, Salvador M. Bezos

June 28, 2013

/s/ Seth P. Waxman
SETH P. WAXMAN

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF RELATED CASES ................................................... iii

INTRODUCTION ........................................................................................1

ARGUMENT .................................................................................................2

I.    NEWEGG'S TREATMENT AT TRIAL OF CLAIM 35 UNDERSCORES THE NECESSITY OF A REMAND FOR A NEW TRIAL ON OBVIOUSNESS ....................2

II.   THERE IS NO BASIS FOR TREATING CLAIM 34 AS "REPRESENTATIVE" OF THE ASSERTED SHOPPING CART CLAIMS, INCLUDING ASSERTED CLAIM 35 ...................................................8

CONCLUSION .............................................................................................10

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Amkor Technology, Inc. v. ITC*, 692 F.3d 1250 (Fed. Cir. 2012)..............................9

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ..........................................5

*Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363
    (Fed. Cir. 2008)..............................................5

*Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323
    (Fed. Cir. 2001)..............................................9

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) ..............................................5

*KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ....................................5

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356
    (Fed. Cir. 2012)..............................................9

## STATUTES

35 U.S.C. § 103(a) ..............................................1

ii

## STATEMENT OF RELATED CASES

Appellee's counsel is aware of the following cases pending in this Court that

would qualify as related under Federal Circuit Rule 47.5:

> *Soverain Software LLC v. Victoria's Secret Direct Brand Management,*
> *LLC, Avon Products, Inc.* (Nos. 12-1649, 12-1650).

# INTRODUCTION

The parties agree that this Court analyzed the wrong claim of U.S. Patent No. 5,715,314 (the "'314 patent"), and that the Court's decision should have discussed asserted claim 35, not claim 34.  It would be a mistake, however, to address this error by focusing solely on the additional limitations contained in claim 35.  Newegg bears the burden of proving by clear and convincing evidence that claim 35 "*as a whole* would have been obvious at the time the invention was made."  35 U.S.C. § 103(a) (emphasis added).  It was thus Newegg's burden at trial to prove that *all* the limitations of claim 35, including the limitations of claim 34 from which it depends, would have been obvious in that particular combination at the time of invention—a daunting task given the filing date of *October 24, 1994* at the dawn of the Internet era.  Soverain submits that Newegg failed to carry that burden, and Newegg certainly fell far short of making the overwhelming showing required for this Court to take the issue away from the jury.  As discussed in Soverain's petition for rehearing, it was error for this Court to resolve disputed factual questions and fill evidentiary gaps on the claims it analyzed.  The Court should not compound the error by doing the same on claim 35.  The entire case should be remanded for further proceedings consistent with Soverain's Seventh Amendment right to a jury trial.

Further, there is no basis for treating claim 34 as "representative" of the

shopping cart claims, including claim 35. Although Newegg used the term "representative" in the background section of its opening brief when it incorrectly identified claim 34 as the asserted claim in this case, Newegg never argued that the additional limitations of claim 35 could be disregarded when it correctly identified claim 35 as the asserted claim elsewhere in its brief. Indeed, Newegg's entire discussion of obviousness—which took up only a small fraction of its almost 90 pages of briefing—was directed solely to arguing that "it was error to refuse to submit the issue of obviousness to the jury, and Newegg is entitled to a new trial on obviousness." Newegg Br. 43. If there was any waiver in this case, it was Newegg's waiver of the right to the relief that the panel granted.

## ARGUMENT

### I. NEWEGG'S TREATMENT AT TRIAL OF CLAIM 35 UNDERSCORES THE NECESSITY OF A REMAND FOR A NEW TRIAL ON OBVIOUSNESS

Claim 35 is one of the "shopping cart" claims that Soverain asserted against Newegg. These claims describe systems for conducting commercial transactions over a computerized network that include a virtual "shopping cart" and "shopping cart messages" having a "product identifier" that allows the system to keep track of each customer's products. A99 (13:62-14:33). Claim 35 depends from claim 34 and includes additional limitations concerning the creation of a "payment message":

35.    A network-based sales system in accordance with claim 34,

> wherein said shopping cart computer is programmed to cause said
> payment message to be created before said buyer computer causes
> said payment message to be activated.

*Id.* (14:29-33).

Like all of the asserted claims, the evidence at trial on the obviousness of claim 35 was sharply disputed. Newegg's expert, Edward Tittel, purported to testify about each of the recited elements of claim 34—from which asserted claim 35 depends—and where those elements were supposedly found in the CompuServe system. A2316-2327. But Mr. Tittel's testimony reflects only a superficial analysis of several complex limitations.[1] *See* A2320, A2323-2327 (cursory testimony regarding the meaning of claim limitations and whether they are found in the CompuServe system). Moreover, Mr. Tittel provided no explanation for why a person of ordinary skill would have combined disparate elements from three different CompuServe user guides to arrive at the asserted claims, including the combination of elements recited in claim 35. *See* A2309-2311, A2313-2327, A2542-2543.

Mr. Tittel did not expressly address claim 35. He was asked two questions

---

[1] As Mr. Tittel testified on cross-examination, he did not prepare an element-by-element comparison of the claims and the prior art (A2346), he could not recall whether he had seen the district court's claim construction before preparing his first expert report (*id.*), he did not review the prosecution history for the asserted patents (A2350), and he did not prepare an opinion on the question of obviousness (A2351-2353). On these facts, the district court held that "Newegg did not meet its burden of establishing a prima facie case of obviousness." A24.

that arguably relate to the "payment message" limitation recited in claim 35:

> Q.    Was this screen [summarizing the customer's payment selections] created by the server before it was displayed?
>
> A.    Of course it was.
>
> Q.    After it was displayed, could it be accepted or activated?
>
> A.    Yes.

A2326.  But he provided no additional explanation on the obviousness of claim 35.

On rebuttal, Soverain's expert, Dr. Michael Shamos, explained the many flaws in Newegg's obviousness contentions.  *First*, Mr. Tittel failed to identify two of the recited elements in the prior art.  As Dr. Shamos testified, Mr. Tittel failed to identify a "product identifier" in the prior art and he "kind of skipped over those claim limitations that had product identifiers in them."  A2547, *see also* A2546-2548.  Similarly, Mr. Tittel's testimony regarding "shopping cart database" at most infers the limitation from the prior art—an inference that was sharply contested by Dr. Shamos because there was no evidence that any records of customer product selections were ever stored in disk files or collected in any way in a database.  A2557-2560, A2559 ("[I]f all these—these pieces of information are being held in main memory of the computer, that's not a database.").  The absence of evidence on "product identifier" in the prior art and the disputed expert testimony on "shopping cart database," at the very least, raise genuine issues of material fact that should be resolved by a jury in the first instance.

*Second*, Mr. Tittel impermissibly used hindsight to pick and choose elements from three separate CompuServe references directed to different systems in operation at different times.  It is well settled that merely matching up isolated portions of multiple references is not sufficient to establish obviousness under *Graham v. John Deere Co.*, 383 U.S. 1 (1966).  As this Court has held, "vague and conclusory obviousness testimony" is insufficient to prove obviousness as a matter of law since "'[t]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'"  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373, 1374 (Fed. Cir. 2008) (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("To facilitate review, this analysis should be made explicit.").

This is particularly so here, where Mr. Tittel relied on three CompuServe user guides—not manuals for engineers.  A2311 ("These books were aimed at end users to show them how to use CompuServe[.]").  As Mr. Tittel conceded on cross-examination, these guides do not disclose how to implement the alleged elements of the prior art systems.  A2373-2374.  And they relate to the CompuServe system in use at three different times—in 1989 (Bowen); 1993 (Campbell); and 1994 (Ellsworth).  A2309-2311, A2548-2549 (user guides were "published at different times" and "don't even describe the same version of CompuServe").  Newegg thus selected isolated statements from multiple references using the asserted claims as a

roadmap to pull the recited elements from these lengthy disclosures. A2313-2327, A2542-2543. But Newegg failed to offer any evidence showing why a person of ordinary skill in the art would combine the disparate excerpts from these references in the way that Newegg now suggests. *See* A2309-2311, A2313-2327, A2542-2543. And this case is not like *KSR*, where the scope and content of the prior art was undisputed. To the contrary, there were genuine issues of material fact with respect to the limitations missing in the prior art and the combination of references that Newegg alleges a person of ordinary skill in the art would have made.

*Third*, Soverain established that a person of ordinary skill would not have been able to adapt a closed system, like CompuServe, for use on an open, stateless network, like the Internet. It simply would not have worked. A2552 ("[I]t wasn't a simple matter of let's just take all of our existing networking and let's replace it with the internet. If they did that, it just wouldn't work."), A2553 ("[T]he system would completely collapse.").

*Fourth*, Newegg failed to rebut Soverain's evidence of secondary indicia of non-obviousness, including commercial success and accolades. *See* A2578 (Soverain's expert explaining that the technology and "the importance of the patents was recognized in articles in the New York Times and the Wall Street Journal" and the product embodying the inventions "received an internet excellence award"), A2579 (testifying about the "huge number of licensees" for

6

the product embodying the invention, which had "30 percent of the market").[2]

In short, Newegg requested a new trial on obviousness (not a reversal of the judgment of validity) for good reason—the record contains "conflicting evidence" on obviousness of "exactly the kind the jury should consider." Aug. 4, 2011 Oral Arg. 2:9-12 (Newegg's counsel). This is particularly true of asserted claim 35. Newegg's expert offered only the most abbreviated testimony on the additional limitations in claim 35, while Soverain's expert explained in detail Newegg's failure to identify in the prior art all of the elements of independent claim 34 (from which claim 35 depends). Moreover, the history of the shopping cart claims of the '314 patent and U.S. Patent No. 5,909,492 confirms that reasonable fact finders may differ on the question of obviousness. The Patent and Trademark Office allowed the asserted shopping cart claims during two subsequent reexaminations— both of which involved CompuServe prior art. *See* Soverain Pet. 5-6. Likewise, a jury in a subsequent litigation of the shopping cart claims against Avon and Victoria's Secret found no anticipation or obviousness. *See id.* 6.

To hold that claim 34 was invalid, the panel had to fill significant evidentiary gaps, finding limitations that are missing from the prior art and

---

[2] In its opposition to Soverain's petition for rehearing, Newegg attempted to brush aside evidence of secondary considerations by focusing on testimony regarding the failure of others. Newegg Opp. 9-10. But the record on secondary considerations is more comprehensive, including unrebutted testimony regarding commercial success and accolades. A2577-2580.

determining that a person of ordinary skill in the art would have arrived at the

asserted claims from incomplete disclosures in multiple references relating to

CompuServe systems designed to operate on fundamentally different networks.

The treatment of claim 35 at trial provides no support for invalidating that claim in

lieu of claim 34.  As Soverain argued in its petition for rehearing, a new trial on

obviousness is required.

## II.    THERE IS NO BASIS FOR TREATING CLAIM 34 AS "REPRESENTATIVE" OF THE ASSERTED SHOPPING CART CLAIMS, INCLUDING ASSERTED CLAIM 35

No claims were identified or treated as "representative" at trial.  There was

no stipulation by the parties or instruction from the district court regarding

"representative" claims.  During trial, the parties correctly identified the asserted

claims of the three Soverain patents, both for purposes of infringement and

validity.  A1551-1552, A1595-1597, A1682-1683, A2279, A2554, A2560-2561.

When claim 34 was discussed, it was consistently identified as the independent

claim from which asserted claims 35 and 51 both depend, not as a "representative"

claim.  A1551-1552, A1595-1597, A1682-1683, A2279.  And in its final judgment,

the district court correctly identified the asserted claims that were subject to its

determination that Newegg had failed to establish even a prima facie case of

obviousness.  A22-23.

This Court's June 13 order notes that Newegg labeled claim 34 as

"'representative of the shopping cart claims.'"  Order 2 (quoting Newegg Br. 6).

But Newegg's characterization of claim 34 as "representative" arose only in the background section of its opening brief, which merely introduced the shopping cart claims and provided a general overview of the patented technology. *See* Newegg Br. 6 ("The 'Shopping Cart' Claims"). In that section, Newegg also mistakenly identified claim 34 as an asserted claim (*see id.*)—an error that Newegg has sought to correct (Feb. 5, 2013 Ltr. 1). But not even Newegg has suggested that the panel take the unprecedented step of redefining the asserted claims in this case. Newegg has never argued that claim 35 is not in suit, that claim 34 is "representative" in any legally meaningful sense, or that Soverain waived the assertion of claim 35.[3]

Soverain's brief cannot be construed as "agree[ing] that claim 34 is representative of the shopping cart claims," nor is it correct to say that Soverain was "silen[t]" on the question of the asserted claims. June 13, 2013 Order 4. Soverain did not label claim 34 "representative," nor did it acquiesce in Newegg's shorthand characterization of that claim. To the contrary, Soverain clearly identified claim 35 as one of the asserted shopping cart claims:

---

[3] Soverain asserted claim 35 at trial and in its brief on appeal. There is no basis for finding waiver on these facts. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1361 n.3 (Fed. Cir. 2012) (presenting even "the essence of its present arguments to the district court" preserves those arguments for appeal); *Amkor Tech., Inc. v. ITC*, 692 F.3d 1250, 1260 (Fed. Cir. 2012) (raising obviousness "albeit briefly" sufficient to preserve the argument); *see also Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("The doctrine of waiver is limited in its application.").

9

| Shopping Cart Claims | '314 patent | claims 35 and 51 |
| | '492 patent | claim 17 |
| Hypertext Statement Claims | '492 patent | claims 41 and 61 |
| Session Identifier Claims | '639 patent | claims 60 and 79 |

Soverain Br. 7 (highlighting added).  Indeed, even Newegg correctly identified the

asserted shopping cart claims, including claim 35, in the argument section on

obviousness in its opening brief.  Newegg Br. 41.  There is no basis now, any more

than at trial, for "deem[ing]" (in the words of the June 13 order) claim 34, which

was not even asserted, as somehow "representative" of those that were.  Nor is

there any justification for finding asserted claim 35 invalid on the basis of a waiver

that is not only unsubstantiated, but actually refuted by the parties' briefs.

## CONCLUSION

Soverain respectfully requests that the panel reconsider its decision and

remand the case for trial on obviousness as to all asserted claims.

Respectfully submitted,


/s/ Seth P. Waxman

DAVID NELSON                           SETH P. WAXMAN
ROBERT B. WILSON                       THOMAS SAUNDERS
QUINN EMANUEL URQUHART                 MEGAN BARBERO
   & SULLIVAN, LLP        WILMER CUTLER PICKERING
51 Madison Ave., 22nd Floor               HALE AND DORR LLP
New York, NY  10010                    1875 Pennsylvania Ave., NW
(212) 849-7000                         Washington, DC  20006
                                       (202) 663-6000

DAN BROMBERG
QUINN EMANUEL URQUHART                 ROBERT GREENE STERNE
   & SULLIVAN, LLP        JON E. WRIGHT
555 Twin Dolphin Dr., 5th Floor        SALVADOR M. BEZOS
Redwood Shores, CA  94065              STERNE, KESSLER, GOLDSTEIN
(650) 801-5000                            & FOX
                                       1100 New York Ave., NW
                                       Washington, DC  20005
                                       (202) 371-2600

June 28, 2013

# ADDENDUM

1          Specifically using those claim

2   constructions --

3      A    Yes.  The contested claims, correct?

4      Q    -- does -- yes.  Does Newegg infringe any of

5   those claims?

6      A    No, they do not.

7              MR. GIANNETTI:  I object, Your Honor.  He

8   said he's not going to express any opinions.  That

9   sounded like an opinion to me.  I move to strike.

10             THE COURT:  Restate your question,

11  Counsel.

12             MR. BALDAUF:  We can move on, Your Honor.

13             THE COURT:  All right.  So the objection

14  is sustained, and the jury is instructed to disregard

15  the last question and answer.

16     Q    (By Mr. Baldauf) I'd first like to talk about

17  the issue of non-infringement.  Let's focus first on the

18  '314 claim.

19             Now, Soverain has alleged the infringement of

20  Claims 35 and 51.  Since these claims are dependent upon

21  Claim 34 and can't be infringed unless Claim 34 is

22  infringed, I want to just focus on Claim 34 only.

23             What is your understanding about how many

24  limitations Newegg must not satisfy to avoid

25  infringement?

1   prepared your first report?

2       A    That's what I said in my deposition, yes, sir.

3       Q    And didn't you also fail to follow an

4   element-by-element approach in analyzing the claims in

5   that report?

6       A    I paid attention to the elements in the claim.

7   When I worked through the initial set of materials for

8   my expert report, I looked at all the claims, but I only

9   ended up focusing on those claims where I felt there was

10  some chance of making an argument against them.

11      Q    My question is, did you prepare an

12  element-by-element comparison --

13      A    No.

14      Q    -- of the claims to the prior art?

15      A    No, sir, I did not.

16      Q    You didn't do that, right?

17      A    No, sir.

18      Q    That's something you might do if you had to do

19  this again?

20      A    Perhaps, yes.

21      Q    And, in fact, you couldn't even recall if you

22  saw the Court's claim constructions before you wrote

23  your first report; isn't that right?

24      A    Yes, sir, that is correct.

25      Q    And I believe you talked about that the

1    prepared by Newegg's counsel.

2            And here's the question I asked you:  Do you

3    know for a fact whether the Court's claim constructions

4    were used in preparing these documents?

5            And you said:  I do not, sir.

6        A    At the time that I answered that question, I

7    was not aware of it.

8        Q    Okay.  So you prepared a report in this case

9    and you testified at the deposition based upon a set of

10   analyses, and you weren't sure whether the Court's claim

11   constructions had been used at that time; is that right?

12       A    That's what I said, yes, sir.

13       Q    Okay.  Now, another thing that you didn't

14   do -- and I think you mentioned this in your direct

15   examination -- is that when you prepared your report in

16   this case and formed -- and appeared for your first

17   deposition, you didn't review the Patent Office file,

18   the prosecution history for the patents involved in this

19   case, did you?

20       A    No, sir, I did not.

21       Q    And that's something you would certainly do if

22   you did this job again, wouldn't you?

23       A    Yes, sir, it certainly is.

24       Q    All right.  And another thing that you didn't

25   do is that you didn't review all the prior art that was

1    considered by the Patent Office.

2        A    I was already familiar with a fairly major

3    portion of the prior art, and I certainly felt like I

4    knew enough about the prior art to create a background

5    against which to evaluate the claims.

6        Q    Yeah.  But you didn't systematically review

7    all the prior art that was before the Patent Office, did

8    you?

9        A    Given the very large number of items listed in

10   the prior art list, I'm not sure that I would have had

11   time to do it.

12       Q    Was it a matter of time?

13       A    Not necessarily.

14       Q    Is that something you think you would have

15   done if you had more time?

16       A    Yes, I do.

17       Q    And if you had to do this again, you would do

18   that, wouldn't you?

19       A    Without fail.

20       Q    Now, I think at the beginning of your

21   testimony, you said that you understood your role here.

22            Your job for today was to explain the patent,

23   that you were to review the patents and explain them.

24       A    Yes, sir.

25       Q    You didn't say anything about rendering any

1  opinions about obviousness, did you?

2      A    No, I did not.

3      Q    And, in fact, you did not understand your role

4  here, and you did not come prepared here today to render

5  any such opinions, did you?

6      A    I am definitely prepared to talk about matters

7  related to how the technology, methods, and systems

8  described in the patents play against the general

9  background of internet technology in the timeframe of

10 '94, '95, and the filing dates of patents.

11     Q    But you're not here really to give your

12 opinions on obviousness, are you?

13     A    I believe, if I'm asked questions that relate

14 to what a person of ordinary state (sic) in the art

15 could do under the circumstances, that I could provide a

16 meaningful answer.

17     Q    At the time of your deposition, you didn't

18 understand that to be your role, did you?

19     A    No, sir.

20     Q    In fact, just to expand that a bit, the whole

21 subject of validity, that's not something that you've

22 come here prepared with an opinion to express; is that

23 true?

24     A    No, that's not true, sir.

25     Q    So you're an expert -- you believe you're an

 1   expert on patent law and validity?

 2       A    No.  I believe that my expert opinions can

 3   shed light on matters of validity.  I don't think I can

 4   decide matters of validity.

 5       Q    Okay.  Let's take a look at the claim charts

 6   that you testified about in the first part of your

 7   testimony when you were discussing the comparison

 8   between the patent claims and the Newegg system.

 9            The first thing that you talked about was

10   Claim 34 of the '314 patent.  I've put it up there on

11   the easel.

12       A    Yes, sir.

13       Q    Now, you recognize that this claim is what

14   they call a system claim?

15       A    Yes, sir, I do.

16       Q    Okay.  And it says that.  Right -- right at

17   the beginning, it says:  A network-based sales system

18   comprising, correct?

19       A    Yes, it does.

20       Q    And is there any doubt in your mind that

21   Newegg uses their sales system to sell products?

22       A    No, there isn't.

23       Q    Okay.  So when you talked about these various

24   elements of the claim -- for example, you said the buyer

25   computer, that's something that's not part of Newegg --

1  the only thing that forwards.  And if it were not for

2  all the other forwards starting at the client and going

3  through the cloud, the information could not get there.

4      Q    So you agree with Dr. Grimes' analysis on this

5  point that the netscaler, which is under Newegg's

6  control, forwards?

7      A    Once the packet hits the Newegg network

8  boundary, then, yes, Newegg is forwarding the packet.

9      Q    Let's move on to the issues of validity that

10  you talked about.

11          I think one thing -- you were here yesterday

12  when Dr. -- Mr. Trevor testified, weren't you?

13      A    Yes, I was.

14      Q    And you heard him repeatedly say that

15  various -- various pieces -- well, let's put it this

16  way.  You heard him say repeatedly that there were

17  things that he could not find in the three books, the

18  books on CompuServe that you testified about, right?

19      A    I'm not sure what you're saying, sir.  Could

20  you repeat it?

21      Q    Well, I asked him a series of questions about

22  things that were available in CompuServe, and he

23  answered that they were not -- that they were described

24  in CompuServe, and he said they were not there.  For

25  example, the term shopping cart didn't appear in any of

1  considered whether his arguments were correct.  And my

2  opinion is that he hasn't shown any of the asserted

3  claims to be invalid or even argued convincingly in that

4  direction.

5      Q    Does Soverain have to prove that its patents

6  are valid, to your understanding?

7      A    My understanding is it doesn't, no.

8      Q    Is it up to Newegg to prove that the patents

9  are invalid?

10     A    By clear and convincing evidence, yes.

11     Q    Okay.  Let's go to the next slide, if you

12  will.

13     A    Yes.  This deals with anticipation.  And I

14  believe that Mr. Tittel hasn't shown any of the asserted

15  claims to be anticipated, which means he didn't show

16  that any single prior art reference disclosed all the

17  limitations of any particular asserted claim.

18     Q    Now, what about obviousness?  We've heard that

19  word a number of times in this case.  Has -- has

20  Mr. Tittel shown the claims are obvious?

21     A    Well, he didn't use the word obvious, but the

22  demonstrations that he made seemed to be veering in that

23  direction.  And to the extent that he put various

24  references together to try to show that the claims were

25  obvious, I don't think he did that properly, for several

1  reasons.

2         I don't think these are in any particular

3  order, but he used what's referred to as hindsight.  And

4  the idea of hindsight is that now here we are in 2010,

5  we're looking at a patent claim, and someone would like

6  to show that that was obvious back in 1994.

7         So they look at the elements of the claim, and

8  they go around and they hunt around for prior art that

9  seems to disclose this element or that element of the

10 claim.

11        That's hindsight because it uses something

12 which wasn't invented at the time, back in 1994,

13 something that is now invented, as the guidepost for

14 exactly how you go and find references.  And he did

15 that.  And that's not -- that's not a proper analysis

16 for showing obviousness.

17    Q    In his analysis that Mr. Tittel testified

18 about, CompuServe and the CompuServe Electronic Mall, do

19 you recall that?

20    A    Yes.

21    Q    Do you have slides on the -- on the electronic

22 mall --

23    A    Yes.

24    Q    -- of CompuServe?

25        Would you go to those, please?

 1    Q    Is the internet sometimes referred to as an

 2 open system?

 3    A    Yes.

 4    Q    In what sense?

 5    A    Well, it's open -- a good example is I just

 6 passed a restaurant a block or two away from here and

 7 they advertised free internet.  And so what that would

 8 mean is I could just walk into that cafe, sit down, open

 9 up my laptop, and I'm connected to the internet.  No

10 credentials required, no nothing.

11    Q    And that's in contrast to CompuServe where you

12 have to be a member?

13    A    Yes.

14    Q    Would you go to the next slide, please?

15    A    Yes.

16    Q    This -- this slide refers to some specific

17 claims?

18    A    Yes.  This is dealing with what have come to

19 be called the sales system claims, as opposed to the

20 session -- the session identifier claims or the

21 hypertext claims.

22         This is Claims 35 and 51 of the '314 and Claim

23 17 of the '492.

24    Q    Okay.  Do these claims all require that

25 product identifier that you talked about earlier that's

1      Q    -- of those being present?

2      A    With respect to the shopping cart database, I

3  don't agree with him.

4           With respect to the product identifier, he

5  didn't even mention it at all.

6      Q    And those are elements of all of the claims

7  that you've mentioned on this slide of '314, Claim 35

8  and 51; and '492, Claim 17?

9      A    That's right.  And they're not present even if

10 you combine somehow CompuServe with the internet.  It's

11 not just CompuServe alone; it's CompuServe plus the

12 internet does not disclose these things.

13     Q    Okay.  Let's go to the next slide, if you

14 will.

15          Okay.  Now, we're now talking about '492

16 patent Claim 17.  This is another claim involving the

17 shopping cart; is that right?

18     A    Yes.  This just has some additional claim

19 limitations.

20     Q    Okay.  And what would those be?

21     A    Well, they are listed down there.  At least

22 one of the shopping cart messages comprises, includes, a

23 universal resource locator.  He never showed that.  And

24 also the payment message comprising a universal resource

25 locator.  He never showed that either.

## CERTIFICATE OF SERVICE

I, Seth P. Waxman, hereby certify that on the 28th day of June, 2013, I

caused a copy of the foregoing Soverain's Corrected Supplemental Brief Pursuant

to the Court's June 13, 2013 Order to be served on all parties by this Court's

electronic filing system.  In addition, the brief was served by first-class mail on the

following attorneys who are not registered for electronic filing:

David C. Hanson
The Webb Law Firm
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

Claudia Wilson Frost
Pillsbury Wintrop Shaw Pittman LLP
909 Fannin Street
Suite 2000
Houston, TX 77010

Kevin M. Fong
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, CA 94105

/s/ Seth P. Waxman
SETH P. WAXMAN